# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **Leah Prida** <br> 4160 Poe Road <br> Medina, OH 44256 <br><br> Plaintiff, <br><br> -vs.- <br><br> **Option Care Enterprises, Inc.** <br> c/o Corporation Service Company <br> 3366 Riverside Drive, Suite 103 <br> Upper Arlington, OH 43221 <br><br> and <br><br> **Clinical Specialties, Inc.** <br> c/o Corporation Service Company <br> 3366 Riverside Drive, Suite 103 <br> Upper Arlington, OH 43221 <br><br> Defendants. | CASE NO.: 5:23-cv-905 <br><br> **JUDGE SARAH LIOI** <br><br> **AMENDED COMPLAINT FOR RELIGIOUS DISCRIMINATION UNDER 42 U.S.C. § 2000e,** *et seq.* <br><br> **JURY DEMAND ENDORSED HEREON** |

Plaintiff Leah Prida respectfully submits this Amended Complaint against Defendants Option Care Enterprises, Inc. and Clinical Specialties, Inc., for religious discrimination as follows:

## INTRODUCTION

1. Defendants violated Title VII of the Civil Rights Act of 1964 ("Title VII") and the Ohio Revised Code by failing to provide Plaintiff with required religious accommodation and by failing to engage in an interactive process to determine and provide reasonable accommodation.

2. This suit seeks to remedy Defendants' statutory violations and discrimination against Plaintiff who requested a religious accommodation from Defendants' mandate that she conduct weekly asymptomatic COVID-19 testing.

3. Rather than meet its obligations under Title VII, Defendants threatened to terminate Plaintiff if she did not conduct weekly COVID-19 testing, and Defendants terminated Plaintiff for failure to conduct said testing.

4. Defendants' statutory violations, discrimination, and retaliation left Plaintiff with the false choice of conducting weekly testing for COVID-19 in violation of her sincerely held religious beliefs or losing her job.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5(f)(3).

6. Under 28 U.S.C. § 1367(a), this Court has pendent jurisdiction over Plaintiff's state law claim. Plaintiff's claim under Ohio's Anti-Discrimination Law is authorized by Ohio Revised Code § 4112.02.

7. Venue is proper under 28 U.S.C. § 1391(b) because the events complained of occurred in this District and Division.

## PARTIES

8. Plaintiff Leah Prida lives in Medina, Ohio and worked as a Network Cash Applications Specialist at Clinical Specialties, Inc., an Option Care Health Company.

9. Defendant Option Care Enterprises, Inc. is an independent provider of home and alternate treatment site infusion services. Option Care Enterprises, Inc. does business at 6288 Hudson Crossing Pkwy, Hudson, OH 44236 as or through Clinical Specialties, Inc., an Option Care Health Company.

10. Upon information and belief, Defendant Clinical Specialties, Inc. is a subsidiary of Option Care Enterprises, Inc., also doing business at 6288 Hudson Crossing Pkwy, Hudson, OH. For ease of reference both Option Care Enterprises, Inc. and Clinical Specialties, Inc. shall be referred to as "OPTION CARE."

## FACTUAL ALLEGATIONS

11. Plaintiff was hired at OPTION CARE on October 7, 1996.

12. Plaintiff was an employee in good standing, consistently receiving performance bonuses and commendations from management. Even while working remotely every other week during the pandemic, Plaintiff continued her strong performance and received a positive 2021 Annual Performance Review from her manager, Claudia Anastasopoulos ("CLAUDIA"), Director of Network Operations.

13. Plaintiff did not have a patient or customer facing position at OPTION CARE.

14. Three other employees in Network Operations received accommodations to Covid 19 weekly testing, and a fourth had her status fixed in the system to show "remote only" so she did not have to come in and test.

15. OPTION CARE enacted a work from home policy in March of 2020 for those whose jobs permitted. This policy continued over two (2) years. Alternating on-site office work with a fellow employee, Plaintiff worked every other week from home until May 2021 when she began averaging about five (5) days monthly of on-site work.

16. OPTION CARE implemented a mask requirement beginning June 1, 2020 through March 2, 2022.

17. Plaintiff wore a mask at the office regardless of whether a mask mandate was in effect.

18. During Plaintiff's final 2021 performance review with CLAUDIA, Plaintiff asked about her religious accommodation request and mentioned that she took no medications, including aspirin. Although Plaintiff communicated this information confidentially, CLAUDIA exposed both Plaintiff's vaccination status and her private health practices at a company leadership meeting shortly thereafter. Plaintiff felt violated by the disclosure of her private health information to people with no need to know and confronted CLAUDIA via email and in a meeting on March 2, 2022.

### A. Defendant's Vaccine or Weekly Covid-19 Testing Mandate

19. OPTION CARE Chief Executive Officer John Rademacher ("RADEMACHER") sent an email on August 17, 2021, mandating company leadership – director level and above – to be fully vaccinated no later than September 30, 2021. Patient and customer facing team members also had to be fully vaccinated no later than October 15, 2021. Team members who could not be vaccinated due to either a medical condition or a "strongly held" religious belief would be granted exceptions. The email provided instructions to apply for medical or religious accommodation to the vaccine. RADEMACHER strongly recommended all other team members get vaccinated as well.

20. On September 15, 2021, Chief Human Resources Officer Mike Rude ("RUDE") emailed employees confirming the timeline for leadership and patient/customer facing team members to be vaccinated. To comply with upcoming vaccine mandates in some states, RUDE announced that OPTION CARE was working to enroll unvaccinated team members in the Covid-19 Testing Program by each state's effective date.

21. On November 17, 2021, RADEMACHER emailed employees that both the CMS and Federal Contractor vaccine mandates applied to OPTION CARE. The company required all employees either to be fully vaccinated or have an approved medical or religious exemption by

4

January 4, 2022 as a condition of employment. The first dose of Pfizer or Moderna or the single dose of Johnson & Johnson was due by December 6, 2021. The second dose of Pfizer or Moderna was due by January 4, 2022. The email provided instructions on how to apply for medical or religious accommodation to the vaccine.

22. This email was followed by a same day meeting with Chief Operating Officer, Luke Whitworth ("WHITWORTH"). In the meeting, WHITWORTH told employees that OPTION CARE did not follow the OSHA mandate suspension but rather the ongoing CMS and Federal Contractor mandates.

23. On November 18, 2021, WHITWORTH held a Microsoft teams meeting with employees during which he encouraged employees to get vaccinated and report their status.

24. On November 23, 2021, RADEMACHER sent another email stating that both the CMS and federal contractor mandates applied. Employees were instructed to report their vaccination status and either get vaccinated or apply for an accommodation.

25. On December 2, 2021 RADEMACHER emailed employees that a Judge temporarily halted CMS from enforcing mandates and that the federal contractor rule was blocked in Ohio, Kentucky and Tennessee. He encouraged unvaccinated employees in Ohio and the two other states to get vaccinated or pursue exemptions, but he did not mandate them.

26. On December 9, 2021, RADEMACHER emailed employees that a federal court in Georgia issued a nationwide injunction against the federal contractor vaccine mandate. Although both the CMS and the Federal Contractor vaccine mandates were on hold, OPTION CARE chose to operate as if the governing authorities would ultimately enforce federal vaccination requirements by January 4, 2022.

27. RUDE sent an email on December 30, 2021 that the vaccination deadline of January 4, 2022 for ALL employees was on hold until after OPTION CARE received more information from the January 7, 2022 Supreme Court hearings on the CMS and large employer (OSHA) mandates. The company mandate, however, still applied to director level leadership and above and patient and customer facing roles.

28. On January 18, 2022, RUDE emailed employees that after the Supreme Court upheld the CMS vaccine mandate on all states except Texas, all employees in every state, including Texas, had to be vaccinated or receive an approved exemption by February 28, 2022. Only 100% remote employees with no in-person interaction were exempt from the vaccine mandate. If the Supreme Court eventually upheld the Federal Contractor mandate, even those working 100% remote would have to be vaccinated. The weekly covid testing program applied to all unvaccinated members with an approved exemption working in a patient or customer facing role and to those working onsite in a state that mandated testing. The email provided a list of states requiring testing. RUDE did not list Ohio as a state that required testing.

29. On April 19, 2022, the new Chief Human Resources Officer and Chief Diversity Officer, Mike Bavaro ("BAVARO"), emailed employees that effective April 25, 2022 testing was only required in states with testing mandates. The list of states with mandates matched the list provided in RUDE's January 18, 2022 email. Again, Ohio was not listed, and employees in Ohio no longer had to test.

30. When Defendant announced the vaccine mandate, it provided employees with a method to request religious or medical accommodation consistent with EEOC guidance on private employers issuing such mandates. §§ K.1 & K.2., EEOC (Updated July 12, 2022).[1]

---

[1] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws

31. Contrary to CMS and EEOC guidance, however, OPTION CARE's weekly testing mandate was absolute on the unvaccinated seeking religious exemption under Title VII. No reasonable accommodation from weekly testing was offered.

32. Because those who are "fully vaccinated" still carry and transmit Covid-19, Defendant's testing policy is discriminatory on its face. Further, if the "vaccinated" are exempt from weekly testing when they pose essentially the same risk as the unvaccinated of carrying and transmitting Covid-19 when showing no symptoms, it is unreasonable to deny any unvaccinated person's request for accommodation from the weekly testing requirement.

**B. Federal Law Prohibiting Religious Discrimination and Retaliation**

33. Title VII requires employers to offer reasonable accommodation to a requested religious exemption absent demonstration of undue hardship on their business. Failure to do so is an unlawful employment practice. 29 C.F.R. § 1605.2 (b)(1) (Up to date as of October 25, 2022).[2]

34. Title VII prohibits Defendant from discriminating against employees based on religion. This "include[s] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's […] religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

35. Title VII requires that an employer "reasonably accommodate" an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations. *Groff vs. DeJoy*, U.S., No. 22-174 (June 29, 2023). U.S. Equal Employment Opportunity Commission (EEOC) guidance on Title VII and the COVID-19 pandemic provides that employers should "thoroughly consider all possible reasonable accommodation." See *What*

---

[2] https://www.ecfr.gov/ current/title-29/subtitle-B/chapter-XIV/part-1605/section-1605.2#1605.2-footnote-2

7

*You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* §§ K.1, K.2., EEOC (Updated July 12, 2022).[3] Further, "Title VII requires an employer that denies a religious accommodation to show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff*, U.S., No. 22-174.

36. Title VII also prohibits OPTION CARE from retaliating against employees for engaging in protected activity. See *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014).

37. Although Defendant let employees apply for a religious or medical disability exemption and reasonable accommod0ation to the vaccine, Plaintiff's request for religious exemption to the weekly testing mandate was treated differently and processed in a retaliatory and discriminatory manner.

**C.  Defendants' Accommodation Request System**

38. Defendant OPTION CARE created a method for employees to request accommodation for religious or medical exemption from Defendant's vaccine.

39. OPTION CARE failed, however, to provide any method or system by which employees could request accommodation to its weekly COVID-19 testing mandate on unvaccinated employees.

**D.  Plaintiff's Accommodation Requests and Defendants' Responses**

40. Plaintiff submitted her request for a religious exemption to both the vaccine and weekly covid testing on December 28, 2021. In her request, Plaintiff stated that as Christians our bodies belong to God, and we are "accountable to our creator by the way we care for, maintain and protect or bodies." Partaking in vaccines that use "abortion-derived fetal cell lines" offends her and her

---

[3] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws]

religious faith. In addition, she could not subject herself to the testing because Ethylene Oxide, a known carcinogen, is used on the cotton swab in the PCR tests. "Vaccines and/or testing violate his requirements set forth for us in the Bible." Plaintiff quoted I Corinthians 6:19-20 that our bodies are the temple of God. Plaintiff could not alter her "God given body" or risk the potential harm either from the vaccine or the "chemicals in the testing." Plaintiff reiterated her religious belief prevents her from putting a known human carcinogen, like Ethylene Oxide, in her body stating: "This all relates to what I believe in, how I should care for and what I should do with my temple of God."

41. On January 5, 2022, Plaintiff received an email from Employee Relations that they had received her religious exemption request.

42. On February 17, 2022, RUDE approved and signed Plaintiff's exemption request. Later that day, Megan Haggland ("HAGGLAND"), Executive Assistant to RUDE, sent Plaintiff an email stating that her exemption from the Covid vaccine mandate had been approved, and she would receive the signed approval and more information related to weekly testing.

43. On February 22, 2022, HAGGLAND sent Plaintiff a second email stating that she was approved for the vaccine exemption and attached a list of 27 products that used aborted fetal cell lines. This list of 27 products was irrelevant to Plaintiff's exemption request to weekly covid testing – a request that was based on protecting her body "the temple of God" from harmful substances – and merely served as harassment and intimidation, exhibiting Defendant's animus to Plaintiff's religious exemption request. Plaintiff had already received exemption to the vaccine that was developed using aborted baby cell lines. Plaintiff was required to undergo weekly testing and enroll in the testing program. HAGGLAND did not address Plaintiff's request for accommodation to weekly testing.

44. On February 23, 2022, Plaintiff emailed HAGGLAND links to NIH and CDC websites regarding chemicals used in the testing and on viral loads carried by the vaccinated versus the unvaccinated. Plaintiff also stated that she reviewed the list of 27 products HAGGLND sent her.

45. On February 25, 2022, Plaintiff emailed Jeannie Coe ("COE"), Senior Director Human Resources, and HAGGLAND information on the chemicals used in the testing swabs and at home test kits, reiterating her religious objections as stated in her exemption request approved by RUDE on February 1, 2022. After outlining the harmful nature of chemicals used in the testing kits, Plaintiff stated "My body is my temple, given to me by God and I do not take lightly what I choose to put in it, or choose not to put in it." "The last paragraph of my attachment sums this whole email up. I cannot in good conscience alter my God given body 'my temple' and will not risk the harm that may come from the chemicals in the testing."

46. Ethylene Oxide is a known carcinogen used to sterilize nasal swabs for Covid-19 tests.

47. That same day, February 25, 2022, CLAUDIA held a Microsoft teams meeting with Plaintiff threatening termination if Plaintiff did not test weekly for covid. CLAUDIA followed the meeting with an email again threatening termination if Plaintiff did not comply with weekly testing. CLAUDIA did not attempt to discuss reasonable accommodation to weekly covid testing either during the meeting or in the email.

48. Plaintiff responded via email that in RUDE's January 18, 2022 email RUDE approved her exemption request to both the vaccine and weekly covid testing. Plaintiff further stated that she understood but only under duress.

49. Later that afternoon, COE emailed Plaintiff that noncompliance with the weekly testing program would result in termination. COE stated that testing is required for patient or customer facing employees with a vaccination exemption or who work in states where testing is required for

the unvaccinated. COE, however, failed to explain why Plaintiff, who is not patient or customer facing and does not work in a state requiring weekly testing for the unvaccinated, was required to weekly test anyway. COE did not attempt to discuss reasonable accommodation to weekly covid testing.

50. The Covid 19 Mandatory Testing Program emailed Plaintiff that she must download the testing app no later than March 4, 2022 and testing would begin March 7, 2022.

51. On March 1, 2022, Plaintiff sent notarized affidavits with attached evidentiary exhibits to RUDE, CLAUDIA, COE and Ann-Marie Sauta ("SAUTA"), Human Resource Director, protesting the unlawful weekly covid testing policies as well as the violation of her privacy rights by CLAUDIA. These affidavits set forth her declination of the vaccine and testing, lack of consent and HIPPA violations, and quoted numerous Scriptures from the Old and New Testaments.

52. On March 1, 2022, Barb Lanigan ("BARB"), cash poster and co-worker responsible for setting the work schedule, emailed CLAUDIA the in-office schedule for March. BARB attempted to arrange Plaintiff's schedule to work in the office only one week a month, reducing the required testing from four times a month to once a month. Upon learning of the schedule change, CLAUDIA denied those schedule changes and required Plaintiff to come in each week and test. This was retaliatory to Plaintiff's expressed opposition to the mandate.

53. On March 2, 2022, Plaintiff sent CLAUDIA an email protesting the violation of her HIPPA rights by CLAUDIA when CLAUDIA shared Plaintiff's vaccine status and personal health practices with those who did not need to know at a company leadership meeting.

54. On March 2, 2022, CLAUDIA and Jennifer Adkins ("ADKINS"), Supervisor, Revenue Cycle Management, met with Plaintiff regarding Plaintiff's email alleging CLAUDIA's HIPPA violations. Plaintiff provided CLAUDIA with a copy of the affidavits she sent on March 1, 2022

and confronted CLAUDIA about sharing her private information at the leadership meeting. CLAUDIA admitted to sharing Plaintiff's vaccine status at the leadership meeting but claimed that everything in that meeting was kept confidential. Plaintiff stated she would engage in alternative forms of testing that did not require use of the cotton swabs with the Ethylene Oxide.

55. They discussed BARB's change to the schedule that reduced the number of weeks monthly Plaintiff had to work onsite and test for covid. CLAUDIA stated that COE had directed her in an email not to make any accommodation for Plaintiff that involved the rest of the team if Plaintiff refused to test, and that she could make no schedule changes to accommodate Plaintiff. Plaintiff asked for a copy of the email from COE, and CLAUDIA said she would give Plaintiff a copy if COE did not provide it. Plaintiff said that others were allowed to work from home. CLAUDIA responded that Plaintiff would be terminated if she did not test. Neither CLAUDIA nor ADKINS attempted to discuss reasonable accommodation to weekly covid testing or alternative tests.

56. After the meeting, Plaintiff asked CLAUDIA for a copy of the email from COE denying Plaintiff any accommodation to weekly testing. CLAUDIA responded that she was waiting for COE to approve her sending to Plaintiff.

57. Later that same day, Plaintiff met with CLAUDIA, and Deanna Weber ("WEBER"), General Manager, Network Management Services, joined the meeting by phone. Plaintiff again asked for the email from COE, but they said they could not forward a copy because of confidentiality. They stated that they could not change the schedule to accommodate Plaintiff. WEBER said the alternative to testing is termination and that she would get Plaintiff the termination paperwork.

58. Plaintiff again suggested an alternative forms of testing instead of using the cotton swab with the Ethylene Oxide on it because her religious beliefs prevent her from putting harmful

substances in her body. WEBER continuously interrupted Plaintiff, making discussion impossible, and stated that OPTION CARE was not offering that option. WEBER said this was corporate policy across the board. She said that Plaintiff had been a great employee, but nothing could change this. Neither CLAUDIA nor WEBER discussed reasonable accommodations to weekly covid testing or alternative tests with Plaintiff.

59. On March 3, 2022, Plaintiff received an email from CLAUDIA asking Plaintiff to confirm that she voluntarily declined to test as a condition of her vaccine accommodation and stating that if she did not test, her employment would terminate March 9, 2022. Plaintiff also received an email from Katie Shell ("SHELL"), Testing Coordinator, discussing the testing program and threatening termination for failure to test. Neither CLAUDIA nor SHELL discussed reasonable accommodations to weekly covid testing or alternative tests with Plaintiff.

60. On March 4, 2022, Plaintiff responded to CLAUDIA's email stating that she was not quitting voluntarily.

61. CLAUDIA emailed Plaintiff that she would be terminated effective March 7, 2022 if she did not test. CLAUDIA did not discuss reasonable accommodations to weekly covid testing with Plaintiff, nor the possibility of taking a different type of test. Alternative tests were available.

62. On March 7, 2022, Plaintiff emailed CLAUDIA that this was not a voluntary termination, and that OPTION CARE was violating her exemption approval to both the vaccine and testing. Plaintiff further asked to work from home as a reasonable accommodation.

63. On March 9, 2022, Plaintiff followed the schedule calendar and worked at the office for several hours until CLAUDIA came into work and asked if Plaintiff had covid tested with the proctor. When Plaintiff replied that she had not tested, CLAUDIA, with ADKINS on the phone,

13

terminated Plaintiff. Neither CLAUDIA nor ADKINS discussed reasonable accommodations to weekly covid testing or alternative tests with Plaintiff.

**E. EEOC filing and Plaintiff's right to sue**

64. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), without assistance of counsel, raising the issues in this Complaint. Plaintiff submitted further evidence of her protected activities and Defendants' retaliation.

65. The EEOC issued Plaintiff a Notice of Right to Sue on February 2, 2023.

## COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination-Failure to Accommodate

66. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

67. Plaintiff holds sincere religious beliefs that prevent her from receiving either a COVID-19 vaccine or conducting weekly COVID-19 testing.

68. Plaintiff informed Defendants of those beliefs and requested accommodation from the vaccine and weekly testing on religious grounds.

69. Defendants approved an exemption from the vaccine mandate but denied Plaintiff's request for religious accommodation on weekly testing even though Plaintiff was not patient or customer facing and did not work in a state that required asymptomatic testing.

70. Although Plaintiff expressed her willingness to comply with alternate measures such as working fully remote or alternative testing, Defendants did not engage in an interactive process with Plaintiff regarding her request for religious accommodation and instead only responded with blanket denials.

71. Defendants did not provide Plaintiff with reasonable accommodations for her religious beliefs.

72. Defendants discriminated against Plaintiff because of her religious beliefs.

73. Defendants' failure to provide religious accommodation has harmed and will continue to harm Plaintiff.

74. By failing to engage in the interactive process or offer any reasonable accommodation, Defendants' discriminatory actions were intentional and/or reckless and in violation of Title VII.

## COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### Religious Discrimination-Retaliation

75. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

76. Plaintiff engaged in protected activity when she requested religious accommodations from Defendants' Covid-19 vaccine and weekly testing mandate.

77. Plaintiff engaged in protected activity when she protested disclosure of her personal medical information in violation of HIPPA laws.

78. Plaintiff engaged in protected activity when she protested Defendant's unlawful weekly covid testing policies in violation of her sincerely held religious beliefs.

79. Defendants responded to Plaintiff's request for religious accommodation from the weekly testing mandate with a blanket denial.

80. Defendants responded to Plaintiff's protected activity by giving Plaintiff the false choice between weekly testing and termination of employment.

81. Plaintiff's religious beliefs and protected activity were the causes of Defendants' adverse employment action. Defendants' disregard and disparate treatment of Plaintiff's religious accommodation requests for exemption from weekly asymptomatic testing confirms Defendants' animus to requests for religious accommodation. Defendants also retaliated against Plaintiff through unlawful exposure of Plaintiff's private medical information, harassing emails, and

15

termination of employment. Defendants did not engage in an interactive process with Plaintiff because Defendants never intended to provide Plaintiff with accommodation to weekly testing. Defendant refused to consider any accommodation to weekly testing and instead told Plaintiff her only option was termination if she did not weekly test.

82. By retaliating against Plaintiff for engaging in protected activity, Defendants violated Title VII. This violation harmed and continues to harm Plaintiff.

## COUNT III
## Violation of R.C. § 4112.02
## Religious Discrimination in Employment

21. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

22. Ohio Revised Code Section 4112.02 prohibits employment discrimination based on religion.

23. Defendants violated Ohio's Anti-Discrimination law when it terminated Plaintiff due to her religious objections to weekly asymptomatic Covid-19 testing.

24. Defendants has reasonable alternatives available that could have been offered to accommodate Plaintiff's religious beliefs, but Defendants refused Plaintiff those accommodations.

25. Defendants discriminated against Plaintiff because of her religion.

26. Defendants' failure to provide reasonable accommodations harmed and continues to harm Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court award her:

a. Damages including back pay, front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

b. Injunctive relief.

c. Reasonable attorneys' fees and costs.

d. Any other relief that the Court deems just, proper, and equitable.

Respectfully submitted,

**MENDENHALL LAW GROUP**

/s/ Warner Mendenhall
Warner Mendenhall (0070165)
Brian Unger (0096884)
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
warner@warnermendenhall.com
brian@warnermendenhall.com

*Attorneys for Plaintiff*

## JURY DEMAND

A trial by jury is demanded for all issues so triable.

Respectfully Submitted,

/s/ Warner Mendenhall
Warner Mendenhall (0070165)

## CERTIFICATE OF SERVICE

I certify that on this 21st day of July 2023 the foregoing Amended Complaint was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Warner Mendenhall
Warner Mendenhall, 0070165