# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| LEAH PRIDA, | ) | CASE NO. 5:23-cv-00905 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| OPTION CARE ENTERPRISES, INC., et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Pending before the Court is the motion of defendants, Option Care Enterprises, Inc. and Clinical Specialties, Inc. (jointly, "Option Care"), to dismiss the claims alleged against it in plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. No. 12 (Motion).) Plaintiff Leah Prida ("Prida") filed an opposition to the motion (Doc. No. 14 (Opposition)), and Option Care filed a reply (Doc. No. 15 (Reply)). For the reasons set forth herein, the motion to dismiss is GRANTED.

## I.    BACKGROUND

Prida began her employment at Option Care in the fall of 1996. (Doc. No. 10 (Amended Complaint) ¶ 11.)[1] In the fall of 2021, Option Care announced a new COVID-19 vaccination policy. (*Id.* ¶ 19.) Option Care's new policy required all employees to complete a course of COVID-19 vaccinations. (*Id.* ¶ 21.) The policy allowed for both religious and medical exemptions, with exempted employees being required to enroll in a weekly COVID-19 testing program in lieu of receiving a vaccination. (*Id.* ¶¶ 19–21.)

---

[1] Option Care's original motion to dismiss (Doc. No. 6) is denied as moot. The amended complaint is now the operative complaint.

Prida applied for a religious exemption from the COVID-19 vaccination policy on December 28, 2021. (*Id.* ¶ 40.) In support of her application, Prida wrote that the vaccines use "abortion derived fetal cell lines" and that taking such a vaccine "offends me and my religious faith." (Doc. No. 12-1 (Prida's Application and Option Care's COVID-19 Vaccine Accommodation Request Form), at 4.[2]) In the same application, Prida also wrote that she "would not subject [herself] to testing either." (*Id.*) In support of her request to be exempt from the testing program, Prida pointed to the use of an allegedly carcinogenic chemical, Ethylene Oxide, in commonly available COVID-19 testing kits. (*Id.*) She did not mention God, her religious beliefs, or make any references to scripture in support of the request to be exempt from testing. (*Id.*) On February 17, 2022, Option Care approved Prida's request for an exemption from the vaccine requirement via email. (Doc. No. 10 ¶ 42.) The email did not mention Prida's request to be exempt from the testing program, but instead indicated that Prida would receive information about weekly testing. (*See id.*)

On February 25, 2022, Prida replied to Option Care's email approving her request for a vaccine exemption. (*Id.* ¶ 45.) She continued to press for an exemption from the COVID-19 testing program, which was itself provided by Option Care as an accommodation for employees with religious or medical exemptions from the vaccination requirement. (Doc. No. 12-1, at 1–2.) Again, she noted the carcinogenic properties of Ethylene Oxide, and this time she also cited reports about the allegedly harmful effects of another chemical used in COVID-19 testing, Sodium Azide. (Doc. No. 12-2, at 1–2.) Prida also presented arguments about the state of Ohio law as it pertained to vaccination requirements. (*Id.*) Later that day, Prida's manager, Claudia Anastasopoulos ("Anastasopoulos"), informed her that failure to comply with the testing program by March 7,

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system.

2022, would result in termination. (Doc. No. 10 ¶ 47; *see* ¶ 50.) In the two weeks following this meeting, Prida was warned no fewer than six times that failure to comply with the testing program would result in her termination. (*Id.* ¶¶ 47, 49, 55, 57, 59, 61.)

On March 1, 2022, Prida submitted a group of documents to Option Care and Anastasopoulos supporting her request for an exemption from the testing program. (Doc. No. 14-1 (Prida's affidavits).) Throughout the affidavits, Prida makes vague references to a variety of constitutional provisions, court precedents, and laws, including scattered references to Title VII. (*See generally id.*; *see, e.g.*, *id.* at 9 ("*Article I*- Bill of Rights, section 6 – 'there shall be no slavery in this State; no involuntary servitude, unless for the punishment of crime'"); *id.* at 14 ("You have failed to provide proof to me that the Declaration of Independence is null and void, specifically where it states, 'We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain Unalienable Rights, that among these are Life, Liberty, and the pursuit of Happiness.'"); *id.* at 16 ("Cruden v. Neal, 2 N.C. 338 All men decide for themselves whether they want to participate in the institutions of men or not.").) The arguments in these documents, though difficult to summarize, pertained primarily to purported natural rights and bodily autonomy. For example, Prida writes that she retains "sole possession . . . of all her biological materials, functions, and systems" and that she has the "God-given right to decline all attempts to . . . alter any and all of her God given biological materials[.]" (*Id.* at 2.) She supports these assertions with, amongst other irrelevant sources, citations to the Nuremberg Code for arguments against involuntary medical treatments and experiments. (*See, e.g.*, *id.* at 4, 11.)

On March 9, 2022, after confirming that she had not been tested for COVID-19 prior to attending work that day, Option Care terminated Prida's employment. (Doc. No. 10 ¶ 63.) Prida filed a charge of religious discrimination with the EEOC on July 28, 2022. (Doc. No. 12-3 (Charge

and Notice).) She received her right to sue notice on February 2, 2023. (*Id.* at 2.) On May 2, 2023, Prida brought suit in federal court.  (Doc. No. 1 (Complaint).) In response to a motion to dismiss filed on June 30, 2023 (*see* Doc. No. 6), Prida amended her complaint. (Doc. No. 10.) In her amended complaint, Prida alleges that Option Care discriminated against her on account of her religion, violating her rights under Title VII of the Civil Rights Act of 1964 ("Title VII") and Ohio Rev. Code Section § 4112.02.

## II.    LEGAL STANDARD

In the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the sufficiency of the complaint is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Although this standard is liberal, Rule 8 still requires a plaintiff to allege sufficient facts that give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005) (quotation marks and citation omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true," to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679

(quoting Fed. R. Civ. P. 8(a)(2) (second alteration in original)). In such a case, the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 683.

A complaint need not set down in detail all the particulars of a plaintiff's claim. However, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (stating that this standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678 (citing *Twombly*, 550 U.S. at 555). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc*., 859 F.2d 434, 436 (6th Cir. 1988) (internal quotations marks omitted) (emphasis in original), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Stringfield v. Graham*, 212 F. App'x 530, 535 (6th Cir. 2007) (explaining that documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

Option Care's motion to dismiss relies heavily on attached email correspondence between the parties. The Court may properly consider these attached documents because the email

correspondence is both "integral to the complaint" and "incorporated by reference" in the complaint. *See Clark v. Jackson*, No. 22-5553, 2023 WL 2787325, at *2–3 (6th Cir. Apr. 5, 2023). Prida referred to these emails in her complaint (*see* Doc. No. 10 ¶¶ 40, 45), and the emails discuss the events directly preceding her termination. (*See generally* Doc. No. 12-1, 12-2.) The emails attached to Option Care's motion to dismiss are properly considered as part of the motion, and the motion to dismiss is not converted to a motion for summary judgment as a result.

## III.    DISCUSSION

Prida asserts three causes of action against Option Care for alleged religious discrimination. First, she claims that Option Care failed to accommodate her religious practices in violation of Title VII. Second, she claims that Option Care terminated her in retaliation for her opposition to the COVID-19 testing program in violation of Title VII. Third, she claims Option Care terminated her because of her religious beliefs in violation of Ohio Rev. Code § 4112.02. This final claim seems to combine elements of discriminatory discharge, retaliation, and failure to accommodate. The Ohio Supreme Court has found that "federal case law interpreting Title VII of the Civil Rights Act of 1964 . . . is generally applicable to cases involving alleged violations of [Ohio Rev. Code] Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rts. Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981) (collecting cases); *see also Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 720 (6th Cir. 2004) (same). To the extent that Prida's state law claim encompasses elements of discriminatory discharge, retaliation, and failure to accommodate, Option Care's liability for each is analyzed together with the analogous federal claim.

### A.  Failure to Accommodate

Prida first alleges that Option Care failed to offer her a reasonable accommodation for her religious beliefs. To establish a prima facie case of religious discrimination by failure to accommodate, a plaintiff must plead facts that, if believed, show (1) she holds a sincere religious

6

belief that conflicts with an employment requirement, (2) she has informed the employer about the conflict, and (3) she was terminated because of the conflicting requirement. *See Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007). The plaintiff raising a religious discrimination claim must further plead facts that, if believed, demonstrate it was the "religious aspect of her [conduct] that motivated her employer's actions." *Pedreira v. Ky. Baptist Homes for Child., Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (quoting *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 627 (6th Cir. 2000)). This is so regardless of whether the plaintiff frames her claim as a discriminatory discharge or a failure to accommodate. Once a prima facie case is established, the burden shifts to the employer to demonstrate that accommodating the employee's belief imposes "undue hardship" on the employer. *Groff v. DeJoy*, 600 U.S. 447, 454, 143 S. Ct. 2279, 216 L. Ed. 2d 1041 (2023). An employee is not entitled to the accommodation of her choice, but only a reasonable accommodation. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68, 107 S. Ct. 367, 93 L. Ed. 2d 305 (1986).

Title VII defines religion to include "all aspects of religious observance and practice." 42 U.S.C. § 2000(j). Religion is not limited to those practices specifically endorsed by a recognized church but may include any combination of beliefs or practices that "function as a religion in [one's] life." *Welsh v. United States*, 398 U.S. 333, 339, 90 S. Ct. 1792, 26 L. Ed. 2d 308 (1970). The task of the Court is not to consider the reasonableness of any professed belief, but "to decide whether the beliefs professed . . . are sincerely held and whether they are, in [the believer's] own scheme of things, religious." *United States. v. Seeger*, 380 U.S. 163, 185, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965).

This definition of religion is capacious, but it does not expand to include every belief, opinion, or ideology one might embrace. Those that amount to "essentially political, sociological,

or philosophical views" are not protected by either Title VII or Ohio Rev. Code § 4112.02. *Lawhead v. Brookwood Mgmt. Co., LLC*, No. 5:22-cv-00886, 2023 WL 2691718, at *4 (N.D. Ohio Mar. 29, 2023) (quoting *Fallon v. Mercy Cath. Med. Ctr. Of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017)). Courts are well advised to use a "light touch" when evaluating the sincerity of a religious belief. *See Davis v. Fort Bend Cnty.*, 765 F.3d 480, 486 (5th Cir. 2014). But courts in the Sixth Circuit have dismissed claims brought by plaintiffs seeking accommodations by cloaking their secular beliefs in the language and protections of Title VII. *See Pedreira*, 579 F.3d at 728; *Lawhead*, 2023 WL 2691718, at *3; *Robertson v. McKesson Corp.*, No. 2:23-cv-2334, 2023 WL 5177406, at *6 (S.D. Ohio Aug. 11, 2023).

For example, the plaintiff in *Lawhead* was a nurse charged with implementing the COVID-19 vaccination program for a senior living facility at which she was employed. 2023 WL 2691718, at *2. When she was asked to assist in the actual administration of the vaccine, she refused, relying on a bare assertion that administering the vaccine violated her "deeply held religious beliefs." *Id.* The only focused objection she lodged was regarding the "long-term efficacy and safety" of the COVID-19 vaccines, arguing that to administer the vaccines would violate her oath as a nurse. *Id.*

The district court dismissed the plaintiff's complaint, finding that the plaintiff failed to plead facts that directly linked her religious views to her opposition to vaccinations. *Id.* at *3. In so ruling, the court concluded that the plaintiff's "objections to administering the vaccinations [were] based upon her concerns" about the safety and efficacy of the vaccines themselves. *Id.* Relying on prior decisions that have "differentiated between those whose views were religious in nature and those whose views were essentially political, sociological, or philosophical[,]" the court concluded that plaintiff's opposition to administering vaccinations fell into the latter camp. *Id.* at

*4 (quotation marks and citations omitted). The plaintiff's alleged beliefs, the court concluded, "sound in medical and political concerns." *Id.*

The holding in *Lawhead* aligns with the majority of courts to have considered similar claims by plaintiffs seeking to cloak scientific or political beliefs in religious language. *See, e.g.*, *Fallon*, 877 F.3d at 492–93; *Egelkrout v. Aspirus, Inc.*, No. 22-cv-118, 2022 WL 2833961, at *3 (W.D. Wis. July 20, 2022); *Ulrich v. Lancaster Gen. Health*, No. 22-cv-4945, 2023 WL 2939585, at *5–6 (E.D. Pa. Apr. 13, 2023). The facts in *Ulrich* are particularly similar to the present case. There, the plaintiff received an accommodation from her employer's COVID-19 vaccination requirement that required her to test for COVID-19 twice weekly. *Ulrich*, 2023 WL 2939585, at *1. Like Prida, the plaintiff also requested an exemption from the COVID-19 testing requirement. *Id.* at *1–2. In support of her request, the plaintiff cited her belief that her "body is a temple," writing "what I put in my body and how I treat it must comport with…scripture[.]" *Id.* She further cited a concern that COVID-19 testing could "introduce harmful substances" or otherwise "cause adverse health effects[.]" *Id.* at *5. After her request for an accommodation was denied, the plaintiff brought suit for religious discrimination. *Id.* at *2.

The court refused "to count everything Ulrich believes about health as a religious practice." *Id.* at *5. To hold otherwise, it reasoned, would grant a right to all plaintiffs "fungible enough to cover anything" a plaintiff dislikes in the workplace. *Id.* at *5 (quoting *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022), *appeal dismissed*, No. 22-2714, 2023 WL 6057495 (3d Cir. Sept. 18, 2023)). Continuing to the nature of the plaintiff's belief itself, the court wrote that "a concern that [a treatment] may do more harm than good [] is a medical belief, not a religious one." *Id.* at *5 (quoting *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, No. 21-cv-4024, 2021 WL 4399672, at *7 (E.D. Pa. Sept. 27, 2021)). Even recognizing that the plaintiff claimed

her beliefs about science and medicine were necessary to inform her religious belief against harming her body, the court nevertheless found that "it takes more than a generalized aversion to harming the body to nudge a practice over the line from medical to religious." *Id.*

The Court finds the analysis in *Ulrich* persuasive.  As was the case in *Ulrich*, the record in this case does not reflect that Prida ever raised a religious objection to the testing program at all. Instead, Prida refers to a mix of scientific, legal, and political factors when describing her need for an accommodation from the testing requirement. (*See, e.g.*, Doc. No. 12-1, at 4; Doc. No. 12-2, at 1–2; Doc. No. 14-1, at 4–5.) The only reference to COVID-19 testing in Prida's original accommodation request is one in which she discusses the carcinogenic qualities of the testing swabs. (Doc. No. 12-1, at 4.) The request ends by asserting that Prida "will not risk the harm" caused by vaccines or testing. (*Id.*) But such a "generalized aversion to harming the body" is not itself a religious belief under Title VII. *Ulrich*, 2023 WL 2939585, at *5.

Prida's emails and affidavits make it clearer still that her objections to the testing requirement were not religious in nature. Where the plaintiff in *Lawhead* had only once voiced doubts about the safety and efficacy of vaccines, 2023 WL 2691718, at *3, Prida cited her concerns about the chemicals used in COVID-19 tests on at least three separate occasions. (*See generally* Doc. Nos. 12-1, 12-2, 14-1.) In her February 25, 2022, email, Prida articulated a variety of views that are essentially medical, "political, sociological, or philosophical" in nature, *Lawhead*, 2023 WL 2691718, at *4, including arguments about the chemicals in COVID-19 testing and the state of Ohio law on vaccine requirements. (Doc. No. 12-2, at 2.) Her email cited to five scientific publications. (*Id.*) Prida further charged Option Care with failing to request informed consent for a host of medical conditions allegedly associated with COVID-19 testing, violating her bodily autonomy, and illegally usurping legislative powers. (Doc. No. 14-1, at 10–14.) As with the

10

plaintiff in *Lawhead*, these types of "political, sociological, or philosophical" convictions do not express a religious belief, but "sound in medical and political concerns." 2023 WL 2691718, at *4.

While Prida's request for accommodation and later emails did use some religious language, including several quotes from the Bible, these attempts to couch secular preferences amongst generic religious statements do not amount to a sincerely held religious belief.[3] As with the plaintiff in *Ulrich*, Prida's alleged religious belief that her body is "God's temple" would, if allowed, grant the plaintiff carte blanche to accept or reject nearly any condition of her employment. Accordingly, courts have routinely rejected failure to accommodate claims based on such "blanket assertions," finding that they present "isolated moral teachings" rather than sincerely held religious beliefs. *Devore v. Univ. of Ky. Bd. of Trs.*, No. 5:22-cv-00186, 2023 WL 6150773, at *4 (E.D. Ky. Sept 20, 2023) (holding that the plaintiff's belief that "she must be 'able to choose what shall or shall not happen' to her" was not protected); *Finkbeiner* 623 F. Supp. 3d at 465–66 (M.D. Pa. 2022) (holding that the plaintiff's belief that "she has a 'God given right to make [her] own choices'" was not protected); *Blackwell v. Lehigh Valley Health Network*, No. 5:22-cv-03360, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023) (holding that a belief forbidding "insertion of an unwanted foreign objects into [the plaintiff's] body" was not protected).

Prida pleads no facts to suggest that her belief in her body as God's temple is different than those previously denied Title VII protection. Like the plaintiffs in *Lawhead* and *Ulrich*, Prida's proposed accommodation threatens to engulf every employer practice with which she disagrees.

---

[3] Because Prida's application for an accommodation contains both a request for accommodation to the vaccine requirement and a request for accommodation to the testing requirement (*see generally* Doc. No. 12-1), there is some degree of overlap in the beliefs justifying each request. In her application, Prida cites her belief that "abortion is gravely wrong at any stage of pregnancy" in support of her request for accommodation. (*Id.*) This belief is relevant to her opposition to the vaccination requirement, for which she received an accommodation, because Prida also alleges that the vaccines are made using fetal cell lines. (*Id.*) But Prida's religious objection to abortion does not support her opposition to the testing requirement as she has not "alleged any particulars about her religion that would even allow an inference" that her opposition to the testing requirement conflicted with her religious beliefs about abortion. *See Pedreira*, 579 F.3d at 728; *Lawhead*, 2023 WL 2691718, at *3.

11

Rather than presenting a specific religious teaching that conflicts with a specific policy of her employer, Prida's request for accommodation attempts to dress up an isolated moral teaching using biblical quotes and spiritual language. The facts pleaded, if taken as true, do not support the notion that Prida's belief in the sanctity of her body is a religious belief protected under Title VII. Instead, Prida alleges largely secular beliefs in an attempt to procure a "blanket privilege and a limitless exclude for avoiding all unwanted obligation." *Devore*, 2023 WL 6150773, at *4.

The pleaded facts, coupled with the undisputed email correspondence between the parties, leave no doubt that Prida's refusal to participate in the testing program was motivated—at best—by an isolated moral teaching that incorporates scientific and political factors, not religious belief. Option Care was under no obligation to accommodate Prida's secular beliefs under either Title VII or Ohio Rev. Code § 4112.02. As a result, a failure to accommodate claim does not lie.

### B.  Retaliation

Prida also claims that she was discharged in retaliation for protesting alleged violations of the Health Insurance Portability and Accountability Act ("HIPAA"), and for her opposition to the COVID-19 testing policy itself. To set forth a prima facie case of retaliation under either Title VII or Ohio Rev. Code § 4112.02, the plaintiff must plead facts which, if believed, would establish that (1) she engaged in protected activity, (2) the exercise of her protected activity was known to her employer, (3) the employer took an adverse employment action against her, and (4) there was a causal connection between the employee's protected activity and the adverse employment action. *See Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (citation omitted); *Henry v. Abbott Lab'ys*, 651 F. App'x 494, 504 (6th Cir. 2016) (citing *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180 (Ohio 2007) (quotation marks omitted)). Prida has not pled facts that, if believed, would show that she engaged in protected activity, and her claims under both Ohio Rev. Code § 4112.02 and Title VII fail as a result.

12

An employee may demonstrate she engaged in protected activity under Title VII by alleging conduct that falls within one of two clauses in the statute: the opposition clause or the participation clause. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). Participation requires, at minimum, that the employee has filed a formal EEOC charge or otherwise instigated proceedings under Title VII. *Hamade v. Valiant Gov't Servs., LLC*, 807 F. App'x 546, 550 (6th Cir. 2020). Prida filed her charge with the EEOC on July 28, 2022, over four months after she was terminated for failure to comply with the COVID-19 testing policy. (Doc. No. 12-3.) Because Prida did not make a charge or participate in any other Title VII proceeding at the time of her discharge, she cannot claim her activity was protected under the participation clause.

Nor can Prida claim that she was retaliated against for opposing the alleged HIPAA violations. Title VII prohibits only retaliation for opposition to practices made unlawful under Title VII, or those which the plaintiff could reasonably believe are unlawful under Title VII. *See Holden v. Owens-Illinois, Inc.*, 793 F.2d 745, 748–49 (6th Cir. 1986) ("[Title VII] only protects 'opposition' to employment practices that violate Title VII."); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000) (clarifying that opposition must be based on "a reasonable and good faith belief that the opposed practices were unlawful" under Title VII). Title VII does not address any of the rights protected by HIPAA. *See generally* 42 U.S.C. § 2000e-2. Option Care's alleged HIPAA violations, even if opposed by Prida, cannot form the basis of a valid retaliation claim.[4]

Prida's claim that her opposition to the COVID-19 testing policy was protected activity fares no better. "The term 'oppose,' being left undefined by the statute, carries its ordinary

---

[4] Additionally, HIPAA does not provide a private right of action. *See Pitchford v. Metro Nashville Police Dep't*, No. 3:19-cv-256, 2021 WL 2474461, at *3 (M.D. Tenn. June 17, 2021) (collecting cases). There is no evidence that Congress intended Title VII to supply such a right. *Thomas v. Dep't of Health & Hum. Servs., Off. for C.R.*, No. 17-6308, 2018 WL 5819471, at *2 (6th Cir. Aug. 24, 2018). Instead, HIPAA violations are enforced by the Secretary of Health and Human Services. *See* 42 U.S.C. § 1320d–5(a)(1).

meaning, 'to resist or antagonize . . . ; to contend against; to confront; resist; withstand[.]'" *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276. 129 S. Ct. 846, 172 L. Ed. 2d 650 (2009) (citing Webster's New International Dictionary 1710 (2d ed. 1958) (internal citation omitted)). Opposition conduct includes "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer—e.g., former employers, union, and co-workers." *Niswander*, 529 F.3d at 721 (citing *Johnson*, 215 F.3d at 579). Opposition conduct does not include requesting a religious accommodation. *See Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 358 (6th Cir. 2020).

A complaint to management, like that filed by Prida, can be protected under the opposition clause, but it must be sufficiently specific and clear to put the defendant on notice of the discrimination alleged. *See Trujillo v. Henniges Auto. Sealing Sys. N. Am., Inc.*, 495 F. App'x 651, 655–56 (6th Cir. 2012), *as amended* (Oct. 17, 2012). "[A] vague charge of discrimination in an internal letter or memorandum is insufficient to constitute opposition to an unlawful employment practice." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313–14 (6th Cir. 1989). And a complaint in which the plaintiff mixes charges of discrimination with generalized management grievances will not be protected where it is clear that the plaintiff is really contesting management practices. *Id.* at 1313.

Prida's amended complaint fails to specify the activity she engaged in as opposition to the COVID-19 testing program at Option Care. In her opposition brief, Prida cites the affidavits she submitted on March 1, 2022, as her opposition activity. (Doc. No. 14, at 22 (citing Doc. No. 10 ¶ 51).) But these affidavits make scant reference to Title VII or discrimination, instead focusing on

14

natural rights, vaguely described constitutional rights, and a hodgepodge of largely antiquated and inapplicable statutes and court cases. (*See generally* Doc. No. 14-1.) At the end of the document, where she finally makes her demand, Prida accuses Option Care of "trespassing my sovereign body," "harassing and harming me," "threatening my right to work," and "violat[ing] . . . due process." (*Id.* at 17–18.) Far from clear and specific, the accusations in these documents are confusing, vague, and difficult to decipher. To the extent one can decipher any concrete charges against Option Care, they are largely concerned with violations of purported natural rights, general notions of constitutional rights, and state law tort injuries.

Even if Prida could allege facts sufficient to show that she engaged in protected activity by opposing the COVID-19 testing policy, her retaliation claim would still fail because she has not pled facts that, if believed, show a causal connection between her opposition activity and Option Care's decision to terminate her employment. An employee can often allege sufficient causal connection by showing a close temporal proximity between her protected activity and the employer's adverse employment action. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). A period of several weeks or even months between the protected activity and the employee's discharge may fulfill the plaintiff's obligation to produce evidence of a causal connection. *Seeger v. Cincinnati Bell Tel. Co.*, LLC, 681 F.3d 274, 283–84 (6th Cir. 2012) (collecting cases). But temporal proximity standing alone is not enough to allege a causal connection in all cases. Temporal proximity alone is insufficient when an employer is merely "proceeding along lines previously contemplated[.]" *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001).

The order of events makes clear that Prida's termination was a "previously contemplated" employment action in response to her failure to test. *Breeden*, 532 U.S. at 272. Option Care set a

15

final deadline of February 28, 2022, by which time "all employees . . . had to be vaccinated or receive an approved exemption." (Doc. No. 10. ¶ 28.) Over the following two weeks, Prida received no fewer than six warnings from management at Option Care, each of which indicated that she would be terminated for failing to comply with the testing program. (*Id.* ¶¶ 47, 49, 54, 57, 59, 61.) The import of this requirement, coupled with a deadline, is clear: those employees not in compliance with the COVID-19 testing policy by March 7, 2022, would be terminated. This much was confirmed on February 25, 2022, when Anastasopoulos held a meeting with Prida to inform her that she would be terminated if she did not comply with the testing program. (*Id.* ¶ 47.) At no point is it alleged that anyone at Option Care mentioned Prida's alleged opposition activity.

Prida alleges that the affidavits she submitted to Option Care and Anastasopoulos are opposition conduct. (Doc. No. 14, at 22 (citing Doc. No. 10 ¶ 51).) But she submitted these affidavits on March 1, 2022, well after being informed that failure to participate in testing would result in her termination. (Doc. No. 10 ¶ 51.) Again, the chronology simply does not support an inference that Prida was terminated in response to submitting her affidavits. Rather, Prida's alleged opposition activity came after she had already been told that failing to test would result in her termination.

Prida has not pled facts that, if believed, would establish that she engaged in protected activity under Title VII. And even if she had, Prida's complaint allegations, if believed, would fall short of demonstrating a causal connection as required by Title VII. Accordingly, Prida fails to state a claim for retaliation under either Title VII or Ohio Rev. Code § 4112.02.

### C.  Discriminatory Discharge

Finally, Prida alleges religious discrimination under Ohio Rev. Code § 4112.02. To establish a prima facie case of religious discrimination, a plaintiff must plead facts that, if believed, show (1) she was a member of a protected class, (2) she was qualified for the position, (3) she

experienced an adverse employment action, and (4) she was replaced by a person outside the protected class or treated differently than similarly situated employees. *See Johnson*, 215 F.3d at 572–73 (2000) (citations omitted); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Prida suffered an adverse employment action when she was terminated by Option Care, and there is no dispute that she was qualified for her position. Her claim fails on the remaining two elements of the prima facie case.

For the reasons discussed above, Prida has failed to plead facts sufficient to show that she is a member of a protected class as it relates to her termination. Title VII protects against employment discrimination based on religion. 42 U.S.C. § 2000e-2. As explained above, Prida's views about COVID-19 testing are not religious in nature, but "sound in medical and political concerns." *Lawhead*, 2023 WL 2691718, at *4. Prida refused to participate in the COVID-19 testing program. (Doc. No. 10 ¶¶ 61–63.) Her refusal was predicated on a variety of scientific, legal, and political beliefs. (*See generally* Doc. No. 12-1, 12-2.) The amended complaint does not set forth allegations sufficient to demonstrate that her faith was the reason for her termination. Rather, the record in this case reflects an attempt to cloak scientific and political beliefs using the language and protections of Title VII. *See Ulrich*, 2023 WL 2939585, at *5. Prida has, therefore, not sufficiently alleged that she is a member of a protected class.

Nor does the amended complaint plead facts sufficient to show that Prida was replaced by a person outside the protected class or otherwise treated differently than similarly situated employees. To be "similarly situated" the plaintiff must allege that the employee who was treated more favorably is "similar to the plaintiff 'in all *relevant* respects'" *Stewart v. Esper*, 815 F. App'x 8, 17 (6th Cir. 2020) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th

Cir. 1998) (emphasis in original)). Generalized or vague allegations that another employee was treated better are insufficient. *Stewart*, 815 F. App'x at 17.

The only instance in which Prida's amended complaint even mentions other employees is to note that three other employees received a COVID-19 testing exemption, and an additional employee was shifted to a work-from-home schedule to avoid testing. (Doc. No. 10 ¶ 14.) Prida did allege that these employees were employed in her department and that she was treated differently than these employees. (*Id.*) But Prida did not identify these potential comparators, and she has not pled facts that would demonstrate that these unknown employees are similarly situated. *See, e.g.*, *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009) (finding bald allegations that "no one else" was punished for similar conduct did not raise an inference of discrimination); *Reynolds v. Szczesniak*, No. 21-2732, 2022 WL 3500191, at *7 (6th Cir. Aug. 18, 2022) ("Conclusory allegations that a hypothetical . . . comparator would have received more favorable treatment are not entitled to an assumption of truth.") Without any information about these employees, Prida's allegation that they received more favorable treatment fails.

Because she has failed to plead sufficient factual allegations to demonstrate that she is a member of a protected class, and because she has not identified a similarly situated employee who was treated differently than herself, Prida's claim for discriminatory discharge fails.

## IV.    CONCLUSION

For the reasons set forth herein, Option Care's motion to dismiss is GRANTED. This case is closed.

**IT IS SO ORDERED**.


Dated: October 24, 2023

                                                    _____

                                                    **HONORABLE SARA LIOI**
                                                    **CHIEF JUDGE**
                                                    **UNITED STATES DISTRICT COURT**