option care health™

# COVID-19 VACCINE ACCOMMODATION REQUEST FORM
# RELIGIOUS ACCOMMODATION

In an effort to maintain the health and safety of our workforce, Option Care Health (the "Company") has adopted a policy requiring certain team members receive the COVID-19 vaccine. However, in accordance with its commitment to equal employment opportunities, the Company will provide reasonable accommodations with respect to this policy to qualified individuals who object to the vaccination based on sincerely held religious beliefs, observances, or practices, to the extent required by applicable federal, state, and/or local law, in order for the team member to perform the essential functions of their position, so long as such accommodation does not impose an undue hardship on the Company. If you would like to request a reasonable accommodation with respect to the Company's COVID-19 vaccination requirement for any of the foregoing reasons, please:

- Submit this COVID-19 Vaccine Accommodation Request Form and the attached Authorization for Release of Information.
- Complete Section II of this COVID-19 Vaccine Accommodation Request Form and return it as directed below. Prior to completing Section II, please complete Section I below.
- Submit the completed forms to OC-EmployeeRelations@optioncare.com.

The contents of this request are confidential and will only be shared as needed with the appropriate personnel to consider the implementation of any accommodation. Once the Human Resources department has received your completed forms, they will contact you to discuss the next steps of this process.

**Section I: To be completed by team member:**

| | |
|---|---|
| Leah A. Prida | Cash Application Specialist |
| Team Member Name | Job Title |
| Reimbursement / Hudson, Ohio | Claudia Anastasopoulos |
| Department/Location | Supervisor |

1. Are you seeking an accommodation in the form of an exemption from the COVID-19 vaccination requirement due to a sincerely held religious belief?

☑Yes

☐No

EXHIBIT
D

2. If Yes, please identify the religious belief, observance, or practice that is the basis for your request to be exempted from the Company's COVID-19 vaccination requirement (this includes moral or ethical beliefs as to what is right and wrong, which are sincerely held with the strength of traditional religious views).

see attachment

ALL-STATE LEGAL® EXHIBIT 20

D-000042

3. How long will you need the requested accommodation?
For Lifetime

**Release of Information**

By completing the attached Authorization for Release of Information, I hereby authorize the release of the information in Section II of this Form to the Human Resources Department and necessary leadership for the purpose of determining the availability of workplace accommodations. Because I am seeking an accommodation in the form of an exemption from the Company's COVID-19 vaccination requirement due to a sincerely held religious belief, I further authorize the company to seek clarification of this documentation, if necessary, by contacting any individual who may have knowledge of my religious belief, observance, or practice.

Leah A. Price
Employee signature

12/28/21
Date

**Section II: To be completed by the team member if seeking an accommodation in the form of an exemption from the Company's COVID-19 vaccination requirement due to a sincerely held religious belief:**

**To Team Member:**

In some cases, Option Care Health will need to obtain documentation or other authority regarding your religious belief, observance, or practice. For example, Option Care Health may need to discuss the nature of your religious belief(s), observance(s), or practice(s) and accommodation with your religion's spiritual leader (if applicable) or religious scholars. If requested, can you obtain documentation or other authority to support the need for an accommodation?

Yes ☐ No ☒

If no, please explain why not? ____________________

Leah A. Pride (signature)
Team Member Signature

12/28/21
Date

---

To be completed by Human Resources

Review Date: February 17, 2022

Approved / Denied (Circle One)

Reviewer Signature: (signature)

Reviewer Title: CHRO



D-000044

I was raised as a Christian. I continue to follow God and the principals he laid out for us in his word. I strongly believe that vaccines and/or testing, violate his requirements set forth for us in the Bible. I sincerely believe that all human beings are made in the image of God and this concept affirms the unique value of ALL human life. Exodus 20:13 – as the 6th Commandment states, "You shall not murder". I believe that abortion is gravely wrong at any stage of a pregnancy. Since our loving Heavenly Father created us and gave us such a gift with our physical bodies I have been taught in 1 Corinthians 3:16-17 – "Do you not know that you yourselves are God's Temple and that the spirit of God dwells in you? If anyone destroys the Temple of God, God will destroy him; for the Temple of God is holy, and you are that temple". Also 1 Corinthians 6:19-20 says similar – "Do you not know that your body is the temple of the holy spirit within you, which you have from God? Also, you do not belong to yourselves, for you were bought with a price. By all means, glorify God in your body". As Christians our bodies belong to God. We are accountable to our creator by the way we care for, maintain and protect our bodies. Romans 12:1-2 says "Therefore, I appeal to you by the compassions of God, brothers, to present your bodies as a living sacrifice, holy and acceptable to God, a sacred service with the power of reason. And stop being molded by this system of things, but be transformed by making your mind over, so that you may prove to yourselves the good and acceptable and perfect will of God".

In order to produce and manufacture these vaccines use abortion derived fetal cell lines. Partaking in such, offends me and my religious faith. I will not subject myself to testing either. The United States EPA has shown since 2016 Ethylene Oxide (EO) which is used in these PCR tests on the cotton swab is a known human carcinogen. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6906442/

This all relates to what I believe in, how I should care for and what I should do with my temple of God. I cannot in good conscience alter my God given body and will not risk the harm that may come from both the vaccines or the chemicals in the testings.

EXHIBIT 22
ALL-STATE LEGAL

**From:** Rude, Mike <mike.rude@optioncare.com>
**Sent:** Tuesday, March 1, 2022 7:46 PM
**To:** Prida, Leah
**Cc:** Coe, Jeannie; Anastasopoulos, Claudia
**Subject:** RE: Religious Accommodation approval

**Importance:** High

Leah-
I received the document you have labeled as an affidavit. I have reviewed the entire document [redacted]. Option Care Health maintains that it has offered a reasonable accommodation for your religious objections to our COVID vaccine policy. In managing our COVID vaccination policy, we follow the guidance of Federal agencies, such as the EEOC, CDC and FDA. Our position is still the same: If you are not able to work with the accommodation offered to you, that includes testing, the Company has no alternative to terminating your employment.

Regards,

**Mike Rude**
*SVP & Chief Human Resources Officer*
**M:** 630.470.7067 **O:** 312.940.2529
**E:** mike.rude@optioncare.com

Activator | Harmony | Command | Learner | Responsibility

3000 Lakeside Drive, Suite 300N
Bannockburn, IL 60015

*Extraordinary care that changes lives*

option care health

Confidentiality Notice:
This message, including attachments, is the property of Option Care or its affiliates. It is intended solely for the individuals or entities to which it is addressed. This message may contain information that is proprietary, confidential and subject to attorney-client privilege. If you are not the intended recipient, please immediately notify the sender and delete this message from your system. Any viewing, copying, publishing, disclosure, distribution of this information, or the taking action in reliance on the contents of this message by unintended recipients is strictly prohibited.

**From:** Prida, Leah
**Sent:** Tuesday, March 1, 2022 1:21 PM
**To:** Rude, Mike
**Subject:** RE: Religious Accommodation approval

Mr. Rude
Please see the attached email below from the bottom along with my reply and the research I have done regarding the testing. I submitted my religious accommodation on 12/28/22, in that attachment above, I listed both the vaccine and the testing that you approved on 2/17/22. I attached part of the email you sent out on 1/18/22 that Ohio was not one of the states requiring resting. I have worked at this company for 25 years and the past 2 years had still been coming into the office and working remotely throughout the entire pandemic. I am working this entire week in the office but yet beginning 3/7/22 testing will be required when we are at the end of this pandemic. Now I have been threatened 4 times

[redacted]

**From:** Prida, Leah <leah.prida@optioncare.com>
**Sent:** Tuesday, March 1, 2022 1:21 PM
**To:** Rude, Mike <mike.rude@optioncare.com>
**Subject:** RE: Religious Accommodation approval

Mr. Rude

Please see the attached email below from the bottom along with my reply and the research I have done regarding the testing. I submitted my religious accommodation on 12/28/22, in that attachment above, I listed both the vaccine and the testing that you approved on 2/17/22. I attached part of the email you sent out on 1/18/22 that Ohio was not one of the states requiring resting. I have worked at this company for 25 years and the past 2 years had still been coming into the office and working remotely throughout the entire pandemic. I am working this entire week in the office but yet beginning 3/7/22 testing will be required when we are at the end of this pandemic. Now I have been threatened 4 times last Friday by both Jeannie Coe and Claudia Anastasopoulos, along with a group email from OCH-COVID19Testing that included Jeannie & Ann-Marie, that if I do not download this tracking app to have someone watch me submit to testing that I will be terminated. Here is another link besides the ones I listed below from the NIH website that you may find interesting on the nasal swabs and testing. https://www.bitchute.com/video/wKBBGATV3/jyg/

Please also see the attachments included.

Thank you

*Leah Prida*
*Network Cash Application Specialist*
*Clinical Specialties Inc., an Option Care Health Company*
*6288 Hudson Crossing Pkwy*
*Hudson, OH. 44236*
*440-627-2231*
*Fax – 440-550-8835*
*Leah.prida@optioncare.com*

ClinicalSpecialties
an Option Care owned company

*Passionate People, Partnering in Health to Deliver Extraordinary Care.*

option care

**From:** Coe, Jeannie <jeannie.coe@optioncare.com>
**Sent:** Friday, February 25, 2022 1:56 PM
**To:** Prida, Leah <leah.prida@optioncare.com>; Hagglund, Megan <megan.hagglund@optioncare.com>
**Subject:** RE: Religious Accommodation Request

Thank you for your response, Leah.

We appreciate your feedback on this matter. Our clinical team is working very closely with experts in this area to ensure we are providing the most up-to-date guidance.

Our Covid-19 testing has always included team members under a medical or religious exemption that are patient or customer facing. That testing is in addition to those in states where testing is required for all unvaccinated team members; this is what the email on 1/18/22 was referencing. As an organization we have continually tested individuals across the enterprise, and we are expanding testing to all team members that have an accommodation that go into a facility. When you received your religious accommodation you were sent an email outlining the testing requirements.

Testing is a requirement of those under an accommodation. As an organization we can determine which testing method and process we use to comply, and we have partnered with eMed as our vendor of choice to assist with the proctored testing process. Starting March 7, 2022 any individuals that goes into a center or is patient facing must be vaccinated or

have an approved accommodation. Those with an approved accommodation must test each week prior to the start of their work week.

Please work with your leader to coordinate with them how to acquire testing kits and please be sure to test prior to the start of each week that you go to a center. Noncompliance with the testing program will result in termination.

Thank you –

**Thank you,**
**Jeannie**

Jeannie Coe
Director, Employee Relations
Option Care
(224) 500-4763
Jeannie.Coe@optioncare.com

Woo | Positivity | Arranger | Activator | Developer

option care health

**Confidentiality Notice:**
This message, including attachments, is the property of Option Care or its affiliates. It is intended solely for the individuals or entities to which it is addressed. This message may contain information that is proprietary, confidential and subject to attorney-client privilege. If you are not the intended recipient, please immediately notify the sender and delete this message from your system. Any viewing, copying, publishing, disclosure, distribution of this information, or the taking action in reliance on the contents of this message by unintended recipients is strictly prohibited.

**From:** Prida, Leah <leah.prida@optioncare.com>
**Sent:** Friday, February 25, 2022 8:08 AM
**To:** Hagglund, Megan <megan.hagglund@optioncare.com>
**Cc:** Coe, Jeannie <jeannie.coe@optioncare.com>; Prida, Leah <leah.prida@optioncare.com>
**Subject:** RE: Religious Accommodation Request

Thank you Megan, I reviewed your attachment of the list of 27 products that use cell lining and I can honestly say I have NEVER taken any of those over the counter products except Aleve a few times in my life, last time was 2019. I was not aware of that particular product, so that has given me more resolve to continue the way I believe in my heart and how I was raised. I always have used natural remedies. Examples - anti-inflammatories such as Turmeric or natural pain relievers such as white willow bark. I know that is what aspirin is derived from, the way God has made the product, not the way man has changed it. Not only was I raised very religious, I was also raised all natural. I only take natural herbs and vitamins from a very high quality company that I am also a consultant with. As you read in the attachment that was approved, signed off on, and was sent back to me, I included the testing.
I attached the link to the NIH website which showes the use of **Ethylene Oxide (EO)** in the test swabs, which has been shown since 2016 from the EPA to be carcinogenic in humans. Again here is the link - https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6906442 .

In doing further research the at home tests from Abbott have what is called **Sodium Azide** showing exposure to this harmful chemical can lead to numerous health issues including causing death for decades. These test kits don't have FDA approval, but only emergency use authorization. When mixed with water this chemical changes rapidly to a toxic gas or

when coming into contact with solid metals. Poisoning from this chemical can cause heart and brain damage. Please look at this article https://thetruereporter.com/breaking-abbott-binaxnow-c-19-home-test-kit-has-lethal-substances/ which then led me to another link from the NIH website regarding the safety of this chemical Sodium Azide that is in the at home test kits https://pubmed.ncbi.nlm.nih.gov/12851150/. On 2/22/22 the news is showing the Poison control center is warning people about this very chemical in the rapid antigen tests, they can cause chemical burns, irritate the skin, besides the long list of side effects from both inhalation and ingestion.

It is my understanding that back in July 2021 from the CDC website - https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html the viral loads are similar in the vaccinated vs the unvaccinated thus caused everyone to wear the masks again. The following month at the end of August 2021 https://peckford42.wordpress.com/2021/08/31/scientists-fully-vaccinated-carry-251-times-the-covid-viral-load-as-unvaccinated
Scientists and researchers at Oxford University Clinical research group published in the Lancet on 8/10/21 found that being vaccinated allows individuals to carry unusually high viral loads without becoming ill at first, potentially transforming them into pre-symptomatic super spreaders. I have more of a chance of catching covid from those vaccinated around me in the office. This is what doesn't make sense to me, if the "vaccines" actually work, then why do those vaccinated need protected from the unvaccinated?

The company is saying they are showing equality, diversity and Inclusion, how is equality being shown to those unvaccinated? As shown in the links above from the CDC If both Vaccinated and Unvaccinated can carry the viral load in their nose, Why should we be treated differently? Shouldn't those vaccinated don't also need to test if they can carry the same if not more viral load in their nose?

The following is a snip it directly from the email on 1/18/22 from Mike Rude. Notice below the states highlighted that require the testing. **Ohio is not one of them.**

We will continue to conduct our weekly COVID testing program for all unvaccinated team members who have a medical or religious exemption for patient and customer-facing roles, as well as all unvaccinated team members who work within one of our facilities in states that it is required. Fully remote unvaccinated team members that are not patient or customer-facing will not have to perform COVID testing at this time. We are doing everything we can to make sure we have enough tests for those team members that are required to perform weekly tests. However, we will not be providing tests for team members who are not required to test nor for people's personal use.

As always, we will keep you updated as this situation progresses. Thank you for your patience and support. And thank you for everything you do to provide **extraordinary care that changes lives.**

Thank you,
Mike

**Mike Rude**
**Chief Human Resources Officer**

*States currently requiring testing are: California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, New Jersey, New York, Oregon, Rhode Island, Washington

---

Again let me reiterate what I stated originally in my exemption attachment that I signed and sent in on 12/28/21 and was approved and signed by Mike Rude on 2/17/22. My body is my temple, given to me by God and I do not take lightly what I choose to put in it, or choose not to put in it. Anyone who knows me in the past 25 years working for CSI/Option Care knows that I eat as many all organic, non GMO foods, even what I put on my skin because I had chemical sensitivities in the past and over toxified my liver because of a product I used on my skin. Even a few times being on antibiotics in my life, I have had all over body hive reactions.
I only use herbal remedies and have worked with ND's my entire life, very rarely have I gone to a regular MD. The last paragraph of my attachment sums this whole email up. I cannot in good conscience alter my God given body "my temple" and will not risk the harm that may come from the chemicals in the testing.

Thank you

*Leah Prida*
*Network Cash Application Specialist*
*Clinical Specialties Inc., an Option Care Health Company*
*6288 Hudson Crossing Pkwy*
*Hudson, OH. 44236*
*440-627-2231*
*Fax – 440-550-8835*
*Leah.prida@optioncare.com*

ClinicalSpecialties
an Option Care owned company

*Passionate People, Partnering in Health to Deliver Extraordinary Care.*

option care

**From:** Hagglund, Megan <megan.hagglund@optioncare.com>
**Sent:** Tuesday, February 22, 2022 5:16 PM
**To:** Prida, Leah <leah.prida@optioncare.com>
**Subject:** Religious Accommodation Request

Your accommodation request asking for an exemption from the COVID vaccine mandate for strongly held religious beliefs has been approved. Per this approved accommodation, you will be required to undergo weekly COVID testing. You will be enrolled in our COVID testing program and details will be shared with you prior to the testing effective date. This testing program will be done via an at-home test kit provided by Option Care Health that will be monitored by a CLIA approved proctor.

We have also included some additional information that you may find useful regarding other products tested and/or produced in a similar fashion.

Your approved accommodation will be updated in Workday on your behalf. As your request form contains confidential information, your manager has not been copied on this email, but they will be notified of the approval in a separate email.

**Megan Hagglund**
Executive Assistant to:
Rich Denness – Chief Commercial Officer
Brett Michalak – Chief Information Officer
Mike Rude – Chief Human Resources Officer

**O:** 312.940.2461 | **M:** 224.422.3534
**E:** megan.hagglund@optioncare.com
3000 Lakeside Drive, Suite 300N
Bannockburn, IL 60015

option care health

*Extraordinary care that changes lives*

**Confidentiality Notice:**
This message, including attachments, is the property of Option Care or its affiliates. It is intended solely for the individuals or entities to which it is addressed. This message may contain information that is proprietary, confidential and subject to attorney-client privilege. If you are not the intended recipient, please immediately notify the sender and delete this message from your system. Any viewing, copying, publishing, disclosure, distribution of this information, or the taking action in reliance on the contents of this message by unintended recipients is strictly prohibited.

## AFFIDAVIT/DECLARATION OF TRUTH

Mike Rude

Option Care Health

3000 Lakeside Drive, Suite 300N

Bannockburn, IL. 60015

I, Leah Ann Prida at 4160 Poe Rd, Medina OH 44256, the undersigned, make this Affidavit/Declaration of Truth of my own free will, and I hereby affirm, declare and swear, under my oath and under the pains and penalties of perjury under the laws of the United States of America and of this state of Ohio, that I am of legal age and of sound mind and hereby attest that the statements, averments and information contained in this Affidavit/Declaration are true and correct to the best of my knowledge.

This Affidavit/Declaration of Truth is lawful notification to you, and is hereby made and sent to you pursuant to the national Constitution, specifically, the Bill of Rights, in particular, Amendments I, IV, V, VI, VII, IX and X, and The Bill of Rights of the Ohio Constitution, in particular;

***Article I*- Bill of Rights, section 6** – *"there shall be no slavery in this State; no involuntary servitude, unless for the punishment of crime."*

***Section 1***, where it states: *"All men are, by nature, free and independent, and have certain inalienable rights, among which or those of enjoying and defending life and liberty, acquiring, possessing, and protecting property and seeking and obtaining happiness and safety."*

***Also including, but not limited to, sections 2, 3, 7, 8, 11, 14, 16, 18, and section 20,*** which states *"This enumeration of rights shall not be construed to impair or deny others retained by the people, and all powers, not herein delegated, remain with the people."*

**Section 31:** *"No federal, state, or local law or rule shall compel, directly or indirectly, any person, EMPLOYER or health care provider to participate in a health care system."* Note: 1) "Compel" includes the levying of penalties or fines.

***Article II*-** Legislative Powers, section 1

and requires your written rebuttal to me, in kind, specific to each and every point of the subject matter stated herein, within 3 days, via your own sworn and notarized affidavit, using true fact,

EXHIBIT 26

ALL-STATE LEGAL®

valid law and evidence to support your rebuttal of the specific subject matter stated in this Affidavit/Declaration. You are hereby noticed that your failure to respond, as stipulated, and rebut, with particularity and specificity, anything with which you disagree in this Affidavit/Declaration, is your lawful, legal and binding tacit agreement with and admission to the fact that everything in this Affidavit/Declaration is true, correct, legal, lawful, and fully binding upon you in any court in America, without your protest or objection and that of those who represent you. *U.S. v. Tweel*, 550 F. 2d. 297. "Silence can only be equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading."

- Any act committed by you, Mike Rude, either supports and upholds the Constitutions, national and state, or opposes and violates them.
- The above position is true, factual, lawful and constitutionally ordained.

WHEREAS, the ONLY branch of government who may impose laws, rules, orders, mandates, policy etc. is the Legislative Branch. All health departments, corporations, hospital, Executive and Judicial branches of government have no authority and no power and you are in Constitutional violation if any entity other than our Legislative branch of government imposes any such condition upon the people. The Legislative branch may not make any laws repugnant to the Constitution even in an emergency. No emergency suspends the rights of the people. 16 American Jurisprudence, 98, 2d. The Legislative branch may not delegate authority to any other branch of government or agency with which it operates.

However, despite the above-stated factual, lawful positions, your unconstitutional actions, as described throughout this Affidavit/Declaration of Truth, clearly demonstrate how you have violated all of the above lawful positions, the Constitutions, and acted against my unalienable rights. The following paragraphs and others throughout this Affidavit/Declaration describe some of, but not all, of your unlawful, unconstitutional actions, which have harmed me and others. Your actions have upheld unconstitutional orders and policies which have harmed me.

1. Federal law prohibits any mandate of the Covid-19 vaccines or TESTING as unlicensed, emergency-use-authorization-only. Subsection bbb-3(e)(1)(A)(ii)(III) of section 360 of Title 21 of the United States Code, otherwise known as the Emergency Use Authorization section of the Federal Food, Drug, and Cosmetic Act, demands that everyone give employees the "option to accept or refuse administration" of the Covid-19 vaccine and TESTING.

2. This right to refuse vaccines and Testing, implements the internationally agreed legal requirement of Informed Consent established in the Nuremberg Code of 1947. As the Nuremberg Code established, every person must "be able to exercise free power of

choice, without the intervention of any element of force, fraud, deceit, duress, overreaching, or other ulterior form of constraint or coercion; and should have sufficient knowledge and comprehension of the elements of the subject matter involved as to enable him to make an understanding and enlightened decision" for any medical experimental drug, as the Covid-19 vaccine and testing currently are. The Nuremberg Code prohibited even the military from requiring such experimental vaccines and testing. (Doe #1 v. Rumsfeld, 297 F.Supp.2d 119 (D.D.C. 2003). http://www.cirp.org/library/ethics/nuremberg/

3. Demanding employees divulge their personal medical information invades their protected right to privacy, and discriminates against them based on their perceived medical status, in contravention of the Americans with Disabilities Act. (42 USC §12112(a).) Requiring me to wear a face covering as a visible symbol of my vaccination statues reveals my personal medical information **or requiring me to received weekly testing opens me to harassment, discrimination, or censure.**

4. Conditioning continued employment upon participating in a medical experiment and demanding disclosure of private, personal medical information, may also create employer liability under other federal and state laws, including HIPAA, FMLA, and applicable state tort law principles, including torts prohibiting and proscribing invasions of privacy and battery.

5. By mandating that I undertake a medical intervention as a condition of my employment, whether they are under an EUA designation OR full FDA approval, you are practicing medicine without a license.

6. My physical body is my property and I own the right to it. No employer can demand or prescribe a medical intervention. You are not medically trained to practice medicine non-consensually against me and to interfere with my statutorily acknowledged and God given rights as sovereigns to privacy in matters pertaining to my health and body.

7. Any employer mandating a vaccine is liable to their employee for any adverse event suffered by that employee. ( https://www.osha.gov/coronavirus/faqs#vaccine ). The CDC records reports of the adverse events already reported to date concerning the

current Covid-19 vaccine. ( https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/vaers.html )

8. "There are many cases including but not limited to, such as *Marbury v. Madison 5 US 137* has been upheld in the courts for over 200 years and never overturned. It states: "All laws, rules and practices which are repugnant to the Constitution are null and void". Another case never overturned, *Miranda v. Arizona, 384 US 436, 491* states: "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them."

9. There can be no policy or procedure, rule, law or mandate, among others, that violate any unalienable rights, the Constitutions or Bill of Rights. 42 USC 1983- Civil Action for Deprivation of Rights: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, subjects, or causes to be subjected, any person within the jurisdiction thereof to the deprivation of any rights, privileges, or Immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law."

10. **Mandating the use of Experimental Use Authorization (EUA) products such as the BinaxNOW COVID 19 Ag Card Home test as a condition of my employment and/or without consent is a violation of Title 21, Section 360bbb-3 of the Federal Food, Drug and Cosmetic Act.**

11. This nation is based upon the "rule of law" and not arbitrary and capricious "orders", "rules", "dictates", or "mandates." The Constitution is the Supreme Law of the Land, and any law, rule, order, mandate etc..that is repugnant to the Constitution is null and void.

12. The information you are basing your polices on are erroneous, hearsay, based upon assumption(s) presumptions(s), lies or propaganda and not scientific facts.

13. Mandating me to declare my vaccination status and submit my vaccination documents as a condition of employment is a violation of my right to be secure in my person,

house, papers and effects under the 4th Amendment of the Constitution for the United States of America.

- Olmstead v. U.S. 277, U.S. 438, 478 (1928) "...the right to be let alone is the most comprehensive of rights and the right most valued by civilized men. To protect that right, every unjustifiable intrusion by the government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment."

14. I have not given my consent or put myself under the jurisdiction of The Centers for Disease Control and Mike Rude, to dictate my health procedures.

15. You have not thoroughly researched the COVID-19 injections or testing in order to determine if they have been fully tested and proven entirely safe for me. You cannot prove to me that the COVID-19 injection or testing will not catalyze a lifelong neurodegenerative process, disorder, or disease by poisoning and disabling my brain.

16. COVID19 injections contain some or all of the following ingredients, and/or that these ingredients are dangerous or damaging to my health and injecting them into my body would violate my dietary and religious practices: mRNA, Graphene oxide, Lipids (including 4-hydroxybutyl, azanediyl; bis(hexane-6,1-diyl); bis (2-hexyldaceanoate); 2 (polyethylene glycol)-2000-N; N-Ditetradecylacetamide; 1,2-Distearoyl-sn-glycero-3-phosphocholine); Cholesterol, Potassium chloride, Monobasic potassium phosphate, sodium chloride; Dibasic sodium phosphate dehydrate; sucrose; biological molecules (e.g., components isolate from bacteria and synthetic DNA-virus, bacteria, animal products, plasma made from aborted fetuses), Squalene (Shark liver oil), Excipients/Adjuvants (may include heavy metals, oils), Biological molecules (e.g. components isolated from bacteria and synthetic DNA), Aluminum, Thimerosal (Mercury), Gelatin (Usually sourced from pigs and highly processed), preservatives, stabilizers and emulsifiers, Polysorbate 80, Remnants of the vaccine production process (bacterial and viral particles), Acidity regulators (e.g., succinic acid and disodium adipate), Bovine serum, Ovalbumin (from the whites of chicken eggs), Glutaraldehyde, formaldehyde, Antibiotics (most commonly neomycin, streptomycin, polymyxin B, gentamicin, and kanamycin).

17. You have not provided, posted and/or distributed Hazardous Material Data sheets for the materials and ingredients used in face masks, COVID-19 PCR tests, or At home tests such as BinaxNOW and COVID-19 injections in accordance with OSHA Code 1910.1200(b)(1).

18. You have failed to provide me with informed consent regarding all potential, proven and/or unknown risks of these medical interventions, which include but are not limited to dangerously low levels of oxygen in the bloodstream, dangerously high levels of carbon dioxide in the bloodstream, depression, anxiety, suicide, severe anaphylaxis, myocarditis, cardiac arrest, stroke, autism, miscarriage, infertility, birth defects, chronic or acute autoimmune disorders such as blood clots or cytokine storms. Chronic or acute neurological disorders such as Guillain Barre Syndrome or Bell's Palsy. Severe complications from Antibody Dependent Enhancement (ADE), and Death.

19. You have failed to provide me proof that the mandate you are imposing on me has been passed and signed through Congress as per Article I of the Constitution for the United States of America.

20. You have failed to provide proof to me that the Declaration of Independence is null and void, specifically where it states, "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain Unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness".

21. **You have failed to provide proof to me that my original employment contract with you states that I must surrender any of my unalienable Rights upon your demand.**

22. You have failed to provide me proof that if I agree to receive an EUA Covid-19 at home test, that my employee health insurance plan provides complete coverage should I experience an adverse event, or even death.

23. You have failed to provide me with proof that Workers' Compensation, disability insurance, or other resources will support me should I have an adverse event to an EUA Covid-19 injection or testing and am unable to come to work for days, weeks, or months, or if I am disabled for life.

A list of some, but not all, of your malfeasance includes violations of the following U.S. legal codes/titles and acts:

- 18 U.S.C. § 241 - U.S. Code - Unannotated Title 18. Crimes and Criminal Procedure § 241. Conspiracy against rights
- 18 U.S.C. § 242 - U.S. Code - Unannotated Title 18. Crimes and Criminal Procedure § 242. Deprivation of rights under color of Law
- 42 U.S.C. § 3617 - U.S. Code - Unannotated Title 42. The Public Health and Welfare§ 3617. Interference, coercion, or intimidation
  - *Threat* – Extortion starts with a threat of action.
  - *Intent* – The specific intent of the person making the threat must be to obtain something of value from the other person.
  - *Fear*– The threat of action must be to cause fear in the victim. It isn't required that the victim feels afraid, but that the intent of the perpetrator was to cause fear.

- Title 29 § 2903.21. Menacing, and 2903.22. Aggravated Menacing
- Title 29 § 2903.11. Felonious Assault, and 2903.12. Aggravated Assault
  - *Threat* – Extortion starts with a threat of action.
  - *Intent* – The specific intent of the person making the threat must be to obtain something of value from the other person.
  - *Fear*– The threat of action must be to cause fear in the victim. It isn't required that the victim feels afraid, but that the intent of the perpetrator was to cause fear.

- Federal Health Care Provider Conscience Protection Statutes- Discrimination for:
  - Objected to, participated in, or refused to participate in specific medical procedures, including abortion and sterilization, and related training and research activities
  - Were coerced into performing procedures that are against your religious or moral beliefs
  - Refused to provide health care items or services for the purpose of causing, or assisting in causing, the death of an individual, such as by assisted suicide or euthanasia

- Whether private or public organization, if you have a corporate charter and/or accept any state or federal funds and/or grants of any type, you must abide by the Constitution and may not discriminate upon me.

Title 37, 3702.30, Ohio Administrative Codes 3701-59, Ohio Constitution, Article X, Section 3, Title 3, section 339.061, 42 U.S. Code 2000a-1

Title VII of the Civil Rights Act of 1964. Title VII of the Civil Rights Act

Rehabilitation Act of 1973. Sections 501 and 505 of the Rehabilitation Act

The Civil Rights Act of 1991. The Civil Rights Act of 1991

- U.S. Constitutional violations of Amendments IX and X
- 42 U.S.C. § 1983 – CIVIL ACTION FOR DEPRIVATION OF RIGHTS
- 42 U.S.C. § 1985- CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
- 42 U.S.C. § 1986- ACTION FOR NEGLECT TO PREVENT
- **Cruden v. Neale, 2 N.C. 338 All men decide for themselves whether they want to participate in the institutions of men or not. The United States Supreme Court confirmed this when they said. "…. every man is independent of all laws, except those prescribed by nature. He is not bound by any institutions formed by his fellowman without his consent".**

On 11/17/21, I received an email from John C. Rademacher at 10:50am that a COVID vaccination was required to all employees for employment by which the 1st dose must be received by December 6, 2021 and the 2nd dose by January 4, 2022.

On 11/23/21, I received another email from John C. Rademacher at 9:54am regarding the numerous questions. He said Option Care Health falls within two of the federal mandates-- The CMS rule and the Federal Contractor Requirements. Pressure to report Vaccine Status and upload vaccine card and Get Vaccinated by the above dates or Apply for Medical or religious exemptions.

On 12/2/21 Received another email stating a federal Judge temporarily halted CMS from enforcing mandates earlier in the week the scope is nationwide. The Federal contractor rule is blocked in Ohio. We are still encouraging unvaccinated in the state of Ohio and other 2 states that are blocked to get vaccinated or pursue exemptions.

On 1/18/22 Received an email from Mike Rude Regarding the CMS Mandate. Stating under Covid Testing that OHIO is not one of the states requiring testing.

On 2/17/22 I received my religious Accommodation request approved by Mike Rude even when my attachment stated several times not only was COVID VACCINE included but also the TESTING.

On 2/22/22 I received email from Megan Hagglund copy of my approval also an extra form on Option Care letterhead including products that used HEK 293 cell lines.

On 2/25/22, I emailed back to both Megan Hagglund and Jeannie Coe all of the different issues I had with the chemicals used in the testing swabs, and at home test kits, including all the links to the NIH gov websites, and the CDC.

On 2/25/22 Claudia Anastasopoulos had an online teams meeting at 9:30-10am with me regarding the testing and told me if I didn't submit to the testing my position of 25 years would be terminated.

On 2/25/22 Claudia Anastasopoulos sent me an email at 12:53pm trying to confirm that I understood in order to perform my job functions in the office which I have been doing for the past almost 2 years throughout the pandemic, that if I choose to not test, my employment will be terminated. I replied at 1:25pm, for the record I didn't agree and that Mike Rude's email showed that the testing doesn't apply to state of Ohio, also that my original exemption the testing was listed along with the vaccine that was approved. Also, I told her there is a current 69 page document that is going thru the courts now about the CMS mandates and Ohio is one of the states. I said I understood under duress.

On 2/25/22 Jeannie Coe send an email to me trying to explain the testing methods again letting me know that non compliance in the testing program will result in termination causing me even more anxiety and stress all weekend.

On 2/25/22 Email that came from COVID -19 Mandatory Testing Program (consisting of Jeanie Coe and Ann-Marie Sauta) stating that I must complete the task of downloading the app no later than 3/4/22 along with the eMed Procors to witness my test via Video

On 2/28 at 1:18pm I received another email from norply@navica.abbott inviting me to join the testing program.

The American people, in the instant case, me, are guaranteed life, liberty and property, which cannot lawfully be taken from them without due process of law. You extended absolutely no

due process of law, whatsoever, to me, yet, by your unconstitutional actions, described herein, you are harassing and harming me, threatening my right to work, and imposing unconstitutional positions. By demanding I get the COVD 19 testing in order to be employed, you are trespassing on my sovereign body property. Any action committed in violation of due process of law forfeits any perceived jurisdiction you think you have and all such actions committed are lawfully null and void, without binding force and effect upon me and in any way whatsoever.

Therefore, I, Leah Ann Prida, REQUIRE that Mike Rude, cease and desist unlawful mandates about testing and employment. Such mandates are unconstitutional and a violation of my unalienable rights.

Lawful notification has been provided to you, Mike Rude, a man, stating that if you do not rebut the statements, charges and averments made in this Affidavit/Declaration, then, you tacitly agree with and admit to them. Pursuant to that lawful notification, if you disagree with anything stated under oath in this Affidavit/Declaration of Truth, then rebut to me that with which you disagree, with particularity, within three (3) days of receipt thereof, by means of your own written, notarized affidavit of truth, based on specific, true, relevant fact and valid law to support your disagreement, attesting to your rebuttal and supportive positions, as valid and lawful, under the pains and penalties of perjury under the laws of the United States of America and this state of Ohio. An un-rebutted affidavit stands as truth and fact before any court. Your failure to respond, as stipulated, is your tacit agreement with and admission to the fact that everything in this Affidavit/Declaration of Truth is true, correct, legal, lawful, and is your irrevocable admission attesting to this, fully binding upon you in any court of law in America, without your protest, objection and that of those who represent you.

Affiant further sayeth naught.

All Rights Reserved,

[signature] 2/28/22

Leah A. Prida, a woman Affiant Date

4160 Poe Rd. P.O. Box 1999

Medina, OH. 44256 Medina, OH 44258

## NOTARY STATEMENT

In the State of Ohio

County of Medina

I swear that on this 28 day of FEBRUARY 2022, the above-named Affiant/Declarant, LEAH PRIDA, personally appeared before me, and of her own free will, signed and executed this Affidavit/Declaration of Truth.

[signature]

Notary Public

My Commission Expires: 9-22-2025

Seal:

NOTARY PUBLIC ★ STATE OF OHIO ★

NEAL WOZNIAK
Notary Public, State of Ohio
My Commission Expires
September 22, 2025
COMMISSION: 2015-RE-545698

**Prida, Leah**

| | |
|---|---|
| **From:** | Lanigan, Barbara |
| **Sent:** | Tuesday, March 1, 2022 8:46 AM |
| **To:** | Anastasopoulos, Claudia |
| **Cc:** | Castillo Jr., Jessie; Prida, Leah; Vay, Steven |
| **Subject:** | Revised: March 2022 Cash Poster Schedule |
| **Attachments:** | 03 - March revised.docx |

Hi Claudia,

Here is the revised schedule for March. Jessie, Steven and I agreed that it's fine if Leah works her time in one full week so she will only need to test once every four weeks.

Barbara Lanigan
barbara.lanigan@optioncare.com
6288 Hudson Crossing Pkwy
Hudson, OH 44236
Fax: 440-550-8835

ClinicalSpecialties
an Option Care owned company
option care



EXHIBIT
27
ALL-STATE LEGAL

# March 2022

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | Leah – office ←<br>Barb – backup | 1<br>Leah – office ←<br>Barb - backup | 2<br>Leah – office ←<br>Jessie - backup | 3<br>Leah – office ←<br>Jessie - backup | 4<br>Leah – office ←<br>Steven - backup | 5 |
| 6 | 7 (circled)<br>Barb – office<br>Jessie - backup<br>Testing to begin | 8<br>Barb – office<br>Jessie - backup | 9<br>Jessie – office<br>Steven - backup | 10<br>Steven – office<br>Barb - backup | 11<br>Steven – office<br>Barb - backup | 12 |
| 13 | 14<br>Jessie – office<br>Barb - backup | 15<br>Jessie – office<br>Barb - backup | 16<br>Barb – office<br>Steven - backup | 17<br>Barb – office<br>Steven – backup | 18<br>Steven – office<br>Jessie - backup | 19 |
| 20 | 21<br>Jessie – office<br>Steven - backup | 22<br>Jessie – office<br>Steven - backup | 23<br>Barb – office<br>Jessie - backup | 24<br>Steven – office<br>Jessie - backup | 25<br>Steven – office<br>Barb - backup | 26 |
| 27 | 28<br>Leah – office ←<br>Barb - backup | 29<br>Leah – office ←<br>Barb - backup | 30<br>Leah – office ←<br>Jessie - backup | 31<br>Leah- office ←<br>Jessie - backup | 1<br>Leah – office ←<br>Steven - backup | |
| | | | | | | |

Page 1

LEAH PRIDA V. OPTION CARE ENTERPRISES

Transcription of Audio:
Recording 1
Court Folder Number: 5:23-cv-00905
March 2, 2022
Runtime: 16:44

Page 2

(Beginning of Recording)
MS. PRIDA: Hi Claudia.
MS. ANASTASOPOULOS: Hey, how are ya?
MS. PRIDA: Okay. Here's the original paperwork –
MS. ANASTASOPOULOS: Oh, okay.
MS. PRIDA: -- that I sent in the email, the affidavits.
MS. ANASTASOPOULOS: Okay. I don't -- I mean, I don't know if I need to see this, it's not – but if you want me to have it, I'll -- if you can close the door, that would be good.
MS. PRIDA: Okay.
MS. ANASTASOPOULOS: So, I'm asking another Supervisor to join this because I feel like we need to protect both of our interests --
MS. PRIDA: Okay.
MS. ANASTASOPOULOS: -- at this point. So, hi Jen, it's Jen Atkins.
MS. ATKINS: Hi.
MS. PRIDA: Okay.
MS. ANASTASOPOULOS: Leah is in here, hopefully you can hear us.
MS. ATKINS: (Inaudible). Yeah.
MS. ANASTASOPOULOS: So, let me talk first

Page 3

and then you can say whatever you need to say and, and we'll have some productive discussion, but I feel like there's somethings that I really need to say before we get into that discussion.
You know, first and foremost is that I feel that I've always treated you with nothing but respect, and acknowledgement of, of your issues, your questions, and you know, I've agreed that you need to do what you need to do, and there hasn't been any issue on my part with that, you know, that you need to do what is right for you. So, I was really surprised and disappointed to read your email this morning, because it made me feel like you don't share that feeling with me, that I've been respectful.
MS. PRIDA: Well --
MS. ANASTASOPOULOS: So, hold on, okay, --
MS. PRIDA: Okay.
MS. ANASTASOPOULOS: -- so I just -- I wanted to start out by saying that. Your -- I mean your email was very strong, and you indicated some betrayal, so that concerns me, especially since I feel very differently and that I've always treated you respectfully, and, and acknowledged that you have issues with -- that you want to address regarding the vaccine.

Page 4

But let me address a couple things specifically. So, certainly I, I hope that you understand that any issues with employees, Jeannie Coe has to know every piece of information that there is, and so does Deanna as my boss, and so do the rest of the leaders.
And everything that is discussed in a leadership meeting is considered confidential, and so, I'm disappointed that you feel like there was a discussion that made it outside of the room, I can tell you it wasn't -- I didn't talk about it outside of the room, but we do talk about employees in those meetings, and for something like vaccination status and status of an employee's continued employment, it is important that the entire leadership group know what the status is.
I could get hit by a bus, Deanna could get hit by a bus, that's why we're a group of leaders. If information was shared outside of that meeting, that is definitely, again, very disappointing on behalf of one of our team, but again, what, whatever is happening with an employee, has to be communicated to HR and to other leaders.
It certainly is not done in a manner to be like, oh listen to this, it's because it's information



EXHIBIT 30
ALL-STATE LEGAL®

Page 5

that has to be shared. There are so many things we talk about in those meetings that we never share outside of that room, so, you know I needed you to understand that.

As far as confidentiality about your specific situation, I mean for your -- how do I say this the right way, your feelings, and your, your desire to keep things organic and healthful, has -- is not a surprise to anyone. I could ask anyone with the exception of the new temps out on the floor if they're aware of that about you, and they would say yes. I mean you've never hidden that, so I don't know why you felt like I opened up that information for everyone to know, because I, I think you've always been very forthcoming about that.

I've known that about you, and I respect that, I think it's great, but I, I didn't breach any confidentiality there if -- and you specifically did not tell me this is confidential and I don't want it discussed, any of that information about how you treat your body.

MS. PRIDA: I just feel like it was -- like even after what happened with the scheduling and then Barb changing it, and that was like a retaliation move because --

Page 6

MS. ANASTASOPOULOS: Okay, and --

MS. PRIDA: -- now all of a sudden that --

MS. ANASTASOPOULOS: -- we'll address that. So I, you know, I wanted you to understand about the - - how disturbed I really was by the accusation of, of a breach of confidentiality. So, I, I feel it really necessary to say to you, this is bigger than any of us, this is bigger than me, this is bigger than Jessie, this is bigger than Barb, and I was specifically told, and I will share the email with you if Jeannie Coe doesn't share it with you, but I was specifically told on February -- I'm gonna give you the exact date, 18th, very late in the evening, that I was not to allow you any accommodation that would involve the rest of the team, if you were unwilling to test.

And so when Barb and Jessie sent that email to me yesterday, I had to tell them that they could not do that, because I could lose my job over that, because I was specifically told that you -- your job necessitates that you come into the office on occasion, and that that schedule is there, and that schedule cannot be changed.

And so, again, there was no retaliation there, happy to share the email with you on that if

Page 7

you want to, or Jeannie can share it with you, and I can't speak for, for Jeannie's threatening you or anything like that, because I wasn't involved in any conversations between you and Jeannie. But I certainly did not –

MS. PRIDA: But it was, but it was in [sic] - - it was intended in an email stating that if you do not do this, you will be terminated. That right there is a threat.

MS. ANASTASOPOULOS: It is not a threat Leah, --

MS. PRIDA: That is a threat.

MS. ANASTASOPOULOS: – it's a statement of fact. It is. And I'm sorry you took it as a threat, but again, that is what needs to be understood and it needs to be documented. And again, I will say it again, is that if you choose not to test each time that you have to come into the office on a weekly basis, you will be terminated. And it's not a threat, it's a statement of fact, --

MS. PRIDA: Well, --

MS. ANASTASOPOULOS: -- and I'm sorry that you took it --

MS. PRIDA: -- I feel that strongly, --

MS. ANASTASOPOULOS: -- like a thread [sic] -

Page 8

- like a threat. Okay, I --

MS. PRIDA: -- I feel that strongly, so --

MS. ANASTASOPOULOS: And you're certainly entitled to your feelings, but that isn't the intent of it, it's a statement of fact. And again, I'm gonna say, this is bigger than me, it's bigger than you, it's bigger than Jessie, it's bigger than Barb. And I don't know how else to say it, there's no -- I have no personal feelings other than if someone doesn't want to do something that they -- that, that they stand by that.

MS. PRIDA: That you have the right to decline.

MS. ANASTASOPOULOS: Yes, absolutely. Other than that, what everyone decides to do is their own choice, and I don't have any judgment on that or any feeling on that. So, I wanted you to be aware of that, but I, I mean, I do need you to understand how serious this is at this point.

MS. PRIDA: It just doesn't make sense that the entire pandemic, the worst part of it, I was still coming in the office, I was just checking my temperature, I was wearing a mask, I was not doing any testing, and now it -- we're toward the end, it's called an end-demic now, and we're at the very end of

Page 9

it, but yet now all of a sudden the testing is mandatory. I mean that's just -- it just doesn't make any sense to me.

MS. ANASTASOPOULOS: And I, I can understand --

MS. PRIDA: That's the reason why I went over your head.

MS. ANASTASOPOULOS: Uh, no, I didn't consider it going over my head.

MS. PRIDA: Because I took it, because I took it to Mike Rude because of what he stated in that email on January 18th that said --

MS. ANASTASOPOULOS: Right.

MS. PRIDA: -- that the States that require testing, Ohio was not on that list.

MS. ANASTASOPOULOS: Right.

MS. PRIDA: So that was the reason why I took it to Mike initially, because I, you know, I felt like it wasn't really your decision, --

MS. ANASTASOPOULOS: It's not.

MS. PRIDA: -- even though, you know, even though you've been able to make decisions about schedule changes all along, whether, whether we work once a week, whether we work twice a week, whether we skip a week, whether we have two of us in the office,

Page 10

whether we have one of us in the office, you've been able to make those decisions, so I figured that you were also part of making those decisions, if you actually wanted me to stay, you would've made an exception.

MS. ANASTASOPOULOS: And I would have, but I was told that I cannot. And the only decision that I'm aware that I've made about scheduling is that you as a team, could go down to one day a week. Or, I'm sorry, that you as a team could have one person in the office at a time, and I cleared that with Deanna before I enforced it, and said you guys are free to do that, so I, I wo [sic] -- I cannot and would not make schedule changes like that without asking her, but again, this scheduling change and this testing, is bigger than me, it's bigger than her, it's bigger than everyone that's involved in this, --

MS. PRIDA: Right.

MS. ANASTASOPOULOS: -- and I knew that your team members would want to accommodate you, but again, I didn't tell them ahead of time that we couldn't accommodate you, because that's none of their business.

Again, you know, going along with the confidentiality theme, that isn't something I could

Page 11

ask them to do, and it's none of their business. They took it upon themselves, and unfortunately I had to stop them, and it was very late last night when I read that email, and that's why I felt it important to send it right back then.

I have -- it, it's fine that you're here today. Absolutely, I wasn't -- when I read your email this morning I wasn't even gonna answer it at that point, but it was fine. If it wasn't, I would've called you and said no, it's not okay, you need to leave today.

But you know, I -- there were steps taken yesterday that I wasn't aware of until very late last night, and you know, that -- I did not tell them to -- that they could change the schedule, I didn't tell them that they couldn't accommodate you, because again, it wasn't -- it didn't involve them at this point, and it still doesn't. Your decision on what to do is between you, and your family, and what HR tells you and me has to happen.

MS. PRIDA: Well I'd like a copy of that email from 2/18 stating that, that you know, they were not willing to make an accommodation. Maybe it was due to what I put in my, you know, actual --

MS. ANASTASOPOULOS: Yeah.

Page 12

MS. PRIDA: -- request stating -- because I stated in there twice when they approved it, that I was speaking of the vaccine and the testing. And when it was approved, I had assumed, okay, they were going to accept, you know, my full statement, and, and then all of a sudden I started getting all these emails about you gotta do this, you gotta do this, you gotta download this, and you got -- and, and then I was just like wait a minute, what happened to my actual exemption? It's like they're making it more difficult on people so that you just go ahead and do what you are being pressured into doing, and that's not who I am. So --

MS. ANASTASOPOULOS: I understand that you would feel like that. I do. And yes, I'm glad to share that email. I think it was 2/18, it was a Friday night, it was a Friday night in February, 2/11, 2/18, you'll see when I, when I pulled em. So, you know, I wanted to talk through that, I wanted you to know that I don't have any hard feelings, again, I was more concerned when I read your email this morning because I felt that it was, it was not how I thought our relationship --

MS. PRIDA: Well I was hoping --

MS. ANASTASOPOULOS: -- had been (inaudible -

Page 13

crosstalk).
MS. PRIDA: -- that our relationship was getting better too, you know, --
MS. ANASTASOPOULOS: Yeah.
MS. PRIDA: -- I mean I didn't always feel respect from you until more recently, like I felt like the more that we've worked together, the more, --
MS. ANASTASOPOULOS: Yeah, --
MS. PRIDA: -- you know, --
MS. ANASTASOPOULOS: -- for sure.
MS. PRIDA: -- respect you did have for me, but needless to say, I just -- I, I just feel like I've been betrayed after 25 years, that you know, it's simple, you know, the fact that there's so many other people that are able to work completely fulltime, you know at home, they haven't been made to, you know, get, get testing, get vaxxed, or anything like that, and then just because I have to come in once a week, and I've been doing it for the past two years when the virus was at its worst, and I was fine through the whole thing, so, I mean I just I have to do what I had to do too, so I mean, --
MS. ANASTASOPOULOS: I understand.
MS. PRIDA: -- just like I understand that you guys have to do what you guys have to do, so.

Page 14

MS. ANASTASOPOULOS: Okay, good, I, I'm glad then that we understand each other. I want to, before you leave today, we got the testing kits, I want to give you one of the kit -- like it has four in it. I wanna give you one before you leave, just so that if, you know, whatever you decide to do either way, you're prepared for that. Because we, we ordered them for people that, you know, need to test to come in, so you know, I certainly cannot sway you either way, but I want you to be prepared based on your decision.
MS. PRIDA: So, what is the steps going forward if I do not download the App, and if I do not even get into the system to even test?
MS. ANASTASOPOULOS: So, what I understand from HR is that, that anyone who needs to test and doesn't download the App and has to come in, and doesn't test, is terminated as of Monday. Whether that changes between now and Monday, I don't know, I don't know, so, but that's what my understanding is of it right now.
MS. PRIDA: Okay. Okay.
MS. ANASTASOPOULOS: Okay?
MS. PRIDA: Alright, well I'm glad we cleared the air.
MS. ANASTASOPOULOS: I am too. I, I

Page 15

certainly didn't want there to be those feelings.
MS. PRIDA: Okay.
MS. ANASTASOPOULOS: And --
MS. PRIDA: Thank you.
MS. ANASTASOPOULOS: -- I'm glad we did too. Just before you leave today, make sure you grab one of those tests kits --
MS. PRIDA: Where is at?
MS. ANASTASOPOULOS: -- from me. I don't wanna give em to you out on the floor, so --
MS. PRIDA: Oh, okay. Alright.
MS. ANASTASOPOULOS: -- just --
MS. PRIDA: Just grab it.
MS. ANASTASOPOULOS: -- stick your head in.
MS. PRIDA: Okay.
MS. ANASTASOPOULOS: Yeah.
MS. PRIDA: Alright, thank you.
MS. ANASTASOPOULOS: Okay?
MS. PRIDA: Alright.
MS. ANASTASOPOULOS: Alright, thanks Leah.
MS. PRIDA: Bye.
MS. ANASTASOPOULOS: You can leave that open.
MS. PRIDA: Okay, thank you.
MS. ANASTASOPOULOS: Thanks.
(End of Recording)

Page 16

CERTIFICATE OF TRANSCRIPTIONIST

I, CATHERINE YODER, hereby certify that I was authorized to and did transcribe the provided recording and that the foregoing transcript is a true transcript of said electronic recording to the best of my ability.

I FURTHER CERTIFY that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

DATED this 10th day of November, 2025.

Catherine Yoder

Catherine Yoder

# L. Vaccinations – Title VII Religious Objections to COVID-19 Vaccine Requirements

The EEOC enforces Title VII of the Civil Rights Act of 1964 (Title VII), which prohibits employment discrimination based on religion. This includes a right for job applicants and employees to request an exception, called a religious or reasonable accommodation, from an employer requirement that conflicts with their sincerely held religious beliefs, practices, or observances. If an employer shows that it cannot reasonably accommodate an employee's religious beliefs, practices, or observances without undue hardship on its operations, the employer is not required to grant the accommodation. *See generally* **Section 12: Religious Discrimination**; EEOC **Guidelines on Discrimination Because of Religion**. Although other laws, such as the Religious Freedom Restoration Act, also may protect religious freedom in some circumstances, this technical assistance only describes employment rights and obligations under Title VII.

**L.1. Do employees who have a religious objection to receiving a COVID-19 vaccination need to tell their employer? If so, is there specific language that must be used under Title VII?** *(3/1/22)*

Employees must tell their employer if they are requesting an exception to a COVID-19 vaccination requirement because of a conflict between that requirement and their sincerely held religious beliefs, practices, or observances. Under Title VII, this is called a request for a "religious accommodation" or a "reasonable accommodation."

When making the request, employees do not need to use any "magic words," such as "religious accommodation" or "Title VII." However, they need to explain the conflict and the religious basis for it.

The same principles apply if employees have a religious conflict with getting a particular vaccine and wish to wait until an alternative version or specific brand of COVID-19 vaccine is available to them. *See* Introduction to Section K, above.

As a best practice, an employer should provide employees and applicants with information about whom to contact and the proper procedures for requesting a religious accommodation.

*As an example, here is how* ***EEOC designed its own form for its own workplace****. Although the EEOC's internal forms typically are not made public, it is included here given extraordinary circumstances facing employers and employees due to the COVID*

Plaintiff's Exhibit
50

*(Note: Individuals not employed by the EEOC should not submit this form to the EEOC to request a religious accommodation.)*

**L.2. Does an employer have to accept an employee's assertion of a religious objection to a COVID-19 vaccination at face value? May the employer ask for additional information?** *(3/1/22)*

Generally, under Title VII, an employer should proceed on the assumption that a request for religious accommodation is based on sincerely held religious beliefs, practices, or observances. However, if an employer has an objective basis for questioning either the religious nature or the sincerity of a particular belief, the employer would be justified in making a limited factual inquiry and seeking additional supporting information. An employee who fails to cooperate with an employer's reasonable requests for verification of the sincerity or religious nature of a professed belief, practice, or observance risks losing any subsequent claim that the employer improperly denied an accommodation. *See generally* **Section 12-IV.A.2: Religious Discrimination**.

The **definition of "religion"** under Title VII protects both traditional and nontraditional religious beliefs, practices, or observances, including those that may be unfamiliar to employers. While the employer should not assume that a request is invalid simply because it is based on unfamiliar religious beliefs, practices, or observances, employees may be asked to explain the religious nature of their belief, practice, or observance and should not assume that the employer already knows or understands it.

Title VII does not protect social, political, or economic views or personal preferences. Thus, objections to a COVID-19 vaccination requirement that are purely based on social, political, or economic views or personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs, practices, or observances under Title VII. However, overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system and is not simply an isolated teaching. *See generally* **Section 12-I.A.1: Religious Discrimination (definition of religion)**; *see also* discussion of "sincerity" below.

The **sincerity** of an employee's stated religious beliefs, practices, or observances is usually not in dispute. The employee's sincerity in holding a religious belief is "largely a matter of individual credibility." **Section 12-I.A.2: Religious Discrimination (credibility and sincerity)**. Factors that—either alone or in combination—might undermine an employee's credibility include: whether the employee has acted in a manner inconsistent with the professed belief (although employees need not be scrupulous in their observance); whether the accommodation sought is a particularly desirable benefit that is likely to be sought for nonreligious reasons; whether the timing of the request renders it suspect (for example, it follows an earlier request by the

employee for the same benefit for secular reasons); and whether the employer otherwise has reason to believe the accommodation is not sought for religious reasons.

The employer **may ask for an explanation**of how the employee's religious beliefs, practices, or observances conflict with the employer's COVID-19 vaccination requirement. Although prior inconsistent conduct is relevant to the question of sincerity, an individual's beliefs—or degree of adherence—may change over time and, therefore, an employee's newly adopted or inconsistently observed practices may nevertheless be sincerely held. An employer should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenets of the employee's religion, or because the employee adheres to some common practices but not others. No one factor or consideration is determinative, and employers should evaluate religious objections on an individual basis.

If an employee's objection to a COVID-19 vaccination requirement is not religious in nature, or is not sincerely held, Title VII does not require the employer to provide an exception to the vaccination requirement as a religious accommodation.

**L.3. How does an employer show that it would be an "undue hardship" to accommodate an employee's request for religious accommodation?** *(3/1/22)*

Under Title VII, an employer should thoroughly consider all possible reasonable accommodations, including telework and reassignment. For suggestions about types of reasonable accommodations for unvaccinated employees, *see* K.2, K.6, and K.12, above. In many circumstances, it may be possible to accommodate those seeking reasonable accommodations for their religious beliefs, practices, or observances without imposing an undue hardship.

If an employer demonstrates that it is unable to reasonably accommodate an employee's religious belief, practice, or observance without an "undue hardship" on its operations, then Title VII does not require the employer to provide the accommodation. 42 U.S.C. § 2000e(j). [redacted] Costs to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business—including, in this instance, the risk of the spread of COVID-19 to other employees or to the public.

Courts have found Title VII undue hardship where, for example, the religious accommodation would violate federal law, impair workplace safety, diminish efficiency in other jobs, or cause coworkers to carry the accommodated employee's share of potentially hazardous or

burdensome work. For a more detailed discussion, *see* **Section 12-IV.B: Religious Discrimination (discussing undue hardship)**..

An employer will need to assess undue hardship by considering the particular facts of each situation and will need to demonstrate how much cost or disruption the employee's proposed accommodation would involve. An employer cannot rely on speculative or hypothetical hardship when faced with an employee's religious objection but, rather, should rely on objective information. Certain common and relevant considerations during the COVID-19 pandemic include, for example, whether the employee requesting a religious accommodation to a COVID-19 vaccination requirement works outdoors or indoors, works in a solitary or group work setting, or has close contact with other employees or members of the public (especially medically vulnerable individuals). Another relevant consideration is the number of employees who are seeking a similar accommodation, i.e., the cumulative cost or burden on the employer. *See* K.12 for additional considerations relevant to the undue hardship analysis.

**L.4. If an employer grants some employees a religious accommodation from a COVID-19 vaccination requirement because of sincerely held religious beliefs, practices, or observances, does it have to grant all such requests?** *(3/1/22)*

No. The determination of whether a particular proposed accommodation imposes an undue hardship on the conduct of the employer's business depends on its specific factual context. When an employer is assessing whether exempting employees from getting a vaccination would impair workplace safety, it may consider, for example, the type of workplace, the nature of the employees' duties, the location in which the employees must or can perform their duties, the number of employees who are fully vaccinated, how many employees and nonemployees physically enter the workplace, and the number of employees who will in fact need a particular accommodation. A mere assumption that many more employees might seek a religious accommodation—or the same accommodation—to the vaccination requirement in the future is not evidence of undue hardship, but the employer may consider the cumulative cost or burden of granting accommodations to other employees.

**L.5. Must an employer provide the religious accommodation preferred by an employee if there are other possible accommodations that also are effective in eliminating the religious conflict and do not cause an undue hardship under Title VII?** *(3/1/22)*

If there is more than one reasonable accommodation that would resolve the conflict between the vaccination requirement and the sincerely held religious belief, practice, or observance without causing an undue hardship under Title VII, the employer may choose which accommodation to offer. If more than one accommodation would be effective in eliminating the religious conflict, the employer should consider the employee's preference but is not obligated to provide the

reasonable accommodation preferred by the employee. However, an employer's proposed accommodation will not be "reasonable" if the accommodation requires the employee to accept a reduction in pay or some other loss of a benefit or privilege of employment (for example, if unpaid leave is the employer's proposed accommodation) and there is a reasonable alternative accommodation that does not require that and would not impose undue hardship on the employer's business. *See* **Section 12-IV.A.3: Religious Discrimination (reasonable accommodation)**. If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted.

An employer should consider all possible alternatives to determine whether exempting an employee from a vaccination requirement would impose an undue hardship. *See, e.g.*, K.2. Employers may rely on **CDC recommendations**when deciding whether an effective accommodation is available that would not pose an undue hardship.

**L.6. If an employer grants a religious accommodation to an employee, can the employer later reconsider it?** *(3/1/22)*

The obligation to provide religious accommodations absent undue hardship is a continuing obligation that allows for changing circumstances. Employees' sincerely held religious beliefs, practices, or observances may evolve or change over time and may result in requests for additional or different religious accommodations. Similarly, an employer has the right to discontinue a previously granted accommodation if it is no longer utilized for religious purposes, or if a provided accommodation subsequently poses an undue hardship on the employer's operations due to changed circumstances. Employers must consider whether there are alternative accommodations that would not impose an undue hardship. As a best practice, an employer should discuss with the employee any concerns it has about continuing a religious accommodation before revoking it.

**From:** Coe, Jeannie <jeannie.coe@optioncare.com>
**Sent:** Wednesday, March 2, 2022 5:15 PM
**To:** McKinley, Nicole
**Subject:** FW: Religious exemptions-UPDATE

Seems like her mind is made up.

[redacted]

**From:** Anastasopoulos, Claudia <claudia.anastasopoulos@optioncare.com>
**Sent:** Wednesday, March 2, 2022 3:30 PM
**To:** Coe, Jeannie <jeannie.coe@optioncare.com>
**Cc:** Weber, Deanna <deanna.weber@optioncare.com>
**Subject:** RE: Religious exemptions-UPDATE

Hello, again.

Plaintiff's Exhibit
53

Deanna and I just spoke with her.

She stated that she has decided to continue with her decision to not test and the consequences of termination of employment.

What are our next steps for termination? Does her employment end tomorrow or on Monday and what should be presented to her?

We will also need to retrieve her equipment and we will arrange for that.

**Claudia Anastasopoulos**
**Director, Network Operations**
**Clinical Specialties, Inc.**
**An Option Care Health Company**
**6288 Hudson Crossing Parkway**
**Hudson, OH 44236**

**Mobile: 216-870-5700**

Claudia.anastasopoulos@optioncare.com

option care health · ClinicalSpecialties An Option Care Health® Company

*Extraordinary care that changes lives*

**From:** Coe, Jeannie <jeannie.coe@optioncare.com>
**Sent:** Wednesday, March 2, 2022 3:52 PM
**To:** Anastasopoulos, Claudia <claudia.anastasopoulos@optioncare.com>
**Cc:** Weber, Deanna <deanna.weber@optioncare.com>
**Subject:** RE: Religious exemptions

Just spoke to Deanna –
Please do not forward anything to her. Leah is very litigious and I would be wary of providing documentation to her at this stage.

As far as her concerns, I would explain to her that she needs to remember that as the director you are the individual that is responsible for the work load and division of labor in your organization. It is not for her or others in your team to take it upon themselves to coordinate or organize their schedules, workload, or placement. That is a standard operating process and why you are in charge of the group.

HR will, and has in this instance, provide guidance on how to address a situation to remain consistent and in compliance. In this matter I have told you that we cannot create a role that removes her from the center while others must stay in it. What about the others that we have terminated for not complying with testing, or that we have declined their alternative testing route? We have to remain consistent in these areas. We had this conversation prior to her email, but regardless of that fact it doesn't change that this is a standard process and in line with multiple other similar events across the organization.

I would not recommend you meet with her along regarding any of her concerns.

Thank you!

---

**From:** Anastasopoulos, Claudia <claudia.anastasopoulos@optioncare.com>
**Sent:** Wednesday, March 2, 2022 2:07 PM
**To:** Coe, Jeannie <jeannie.coe@optioncare.com>
**Cc:** Weber, Deanna <deanna.weber@optioncare.com>
**Subject:** RE: Religious exemptions

Hello! Leah Prida wants to see that you and I discussed not accommodating a change in schedule for her to only have to test once per week.

Would you allow me to forward her the portion (only) of the email below that I've highlighted?

I ask because, as I anticipated, her teammates would like to accommodate her and change the schedule. I told them that I cannot allow that, and now have her demanding to know why. She claims it is retaliation because she went "over my head" and sent that information to Mike Rude. I reminded her that she and I spoke and that I encouraged her to do whatever she felt she needed to do in order to feel comfortable with her decision.

Let me know, thanks.

**Claudia Anastasopoulos**
**Director, Network Operations**
**Clinical Specialties, Inc.**
**An Option Care Health Company**
**6288 Hudson Crossing Parkway**
**Hudson, OH 44236**

**Mobile: 216-870-5700**

Claudia.anastasopoulos@optioncare.com

option care health ClinicalSpecialties An Option Care Health® Company

*Extraordinary care that changes lives*

---

**From:** Coe, Jeannie <jeannie.coe@optioncare.com>
**Sent:** Friday, February 11, 2022 6:48 PM
**To:** Anastasopoulos, Claudia <claudia.anastasopoulos@optioncare.com>
**Subject:** RE: Religious exemptions

Of course. I can check with legal, but we would not provide this as an accommodation – we have not "made a role" for team members as an accommodation. If her job requires her to go in then it requires her to go into the office. We cannot pull her and not others because of her vaccination status – that is going to cause further issues with other team members and we would not poll others for their opinion. Can you accommodate everyone not going in? And what reasons will you accept? Which roles? I could go on with these – it's not a practice an organization would want to start because of the issues it can create across the organization.

I am not one of the testing proctors, so I cannot speak to what their process is but I would imagine they would need to swab because they need to verify the sample is from the person testing, which is why it is on video. The only way to confirm the sample is from the team member and not "altered" in some manner is to witness the swabbing process. If we have to check with Navica we can, but every time she tests it will be a different proctor who will not accommodate a shift in process. From my experience it is highly unlikely they will accommodate this request.

**From:** Anastasopoulos, Claudia <claudia.anastasopoulos@optioncare.com>
**Sent:** Friday, February 11, 2022 5:04 PM
**To:** Coe, Jeannie <jeannie.coe@optioncare.com>
**Subject:** RE: Religious exemptions

Yes, I know that. What she wants to work out is one of these 2 options:

1) She is never required to come into the office and her teammates handle that part of it. It's a possibility but only if none of the others object, which they may not. (There are 3 others.)
2) She won't stick the tester up her nostril because she claims that the research documents she submitted with her exemption support that the substance on the end of the tester causes cancer. She's willing to blow her nose in a tissue and put the tester into the tissue sample.

I only listened and let her know that I would check to see if there is still a large backlog. I will only tell her that yes, there is still a backlog and she will be notified of the outcome.

Thanks, have a wonderful weekend.

**Claudia Anastasopoulos**
**Director, Network Operations**
**Clinical Specialties, Inc.**
**An Option Care Health Company**
**6288 Hudson Crossing Parkway**
**Hudson, OH 44236**

**Mobile: 216-870-5700**

Claudia.anastasopoulos@optioncare.com

option care health

ClinicalSpecialties
An Option Care Health® Company

*Extraordinary care that changes lives*

**From:** Coe, Jeannie <jeannie.coe@optioncare.com>
**Sent:** Friday, February 11, 2022 4:02 PM
**To:** Anastasopoulos, Claudia <claudia.anastasopoulos@optioncare.com>
**Subject:** RE: Religious exemptions

It looks like it was approved however it has not been signed and executed yet. The process is very time consuming and has to go through Mike Rude only for final approval.

Also, if she is approved she must participate in testing the weeks she goes into the office. If not she will be terminated – that is not optional.

**From:** Anastasopoulos, Claudia <claudia.anastasopoulos@optioncare.com>
**Sent:** Friday, February 11, 2022 12:06 PM
**To:** Coe, Jeannie <jeannie.coe@optioncare.com>
**Subject:** RE: Religious exemptions

It's Leah Prida

**Claudia Anastasopoulos**
**Director, Network Operations**
**Clinical Specialties, Inc.**
**An Option Care Health Company**
**6288 Hudson Crossing Parkway**
**Hudson, OH 44236**

**Mobile: 216-870-5700**

Claudia.anastasopoulos@optioncare.com

option care health ClinicalSpecialties An Option Care Health® Company

*Extraordinary care that changes lives*

**From:** Coe, Jeannie <jeannie.coe@optioncare.com>
**Sent:** Friday, February 11, 2022 1:06 PM
**To:** Anastasopoulos, Claudia <claudia.anastasopoulos@optioncare.com>
**Subject:** RE: Religious exemptions

Who is the person? I cannot check status without a name. But we are at least a 3 week turnaround on these. They are individually reviewed and we have a high volume to get through.
There is no route around testing if you are going in and have an accommodation. They will be terminated if they do not comply with testing if they have an accommodation.

**From:** Anastasopoulos, Claudia <claudia.anastasopoulos@optioncare.com>
**Sent:** Friday, February 11, 2022 10:08 AM
**To:** Coe, Jeannie <jeannie.coe@optioncare.com>
**Subject:** Religious exemptions
**Importance:** High

Hello! Hope you are well.

I had an employee in tears yesterday because they claim that they filed a religious exemption and received a response back weeks ago that it was being reviewed, but hasn't yet heard that it has been approved or denied.

She has strong feelings about both receiving the vaccine and testing if she needs to come into the office. She is one of the cash posters and so does need to come into the office 1-2 days per week for tasks that need to be completed in office.

I know that there was a large backlog and each had to be individually reviewed so I wanted to get an idea of where HR is with the backlog and if there is any information I can relay to the employee that might calm her anxiety.

Thank you!

**Claudia Anastasopoulos**
**Director, Network Operations**
**Clinical Specialties, Inc.**
**An Option Care Health Company**
**6288 Hudson Crossing Parkway**
**Hudson, OH 44236**

**Mobile: 216-870-5700**

Claudia.anastasopoulos@optioncare.com

option care health · ClinicalSpecialties An Option Care Health® Company

*Extraordinary care that changes lives*

[redacted]

**From:** Option Care Health Communications
**Sent:** Wednesday, April 20, 2022 10:53 PM
**To:** Eiduke, Amy
**Subject:** COVID-19 Testing Update

View in web browser

April 19, 2022

Option Care Health Team Members,
Due to the decreased number of COVID-19 cases across the country we will be scaling back our COVID testing protocols. **Effective April 25**, only those states which mandate testing for health care workers who live in these states and have an approved accommodation and are patient or client facing and/or regularly or occasionally work in an Option Care Health facility will continue with their weekly testing. Currently those states are: California, Hawaii, Illinois, Maine, Maryland, New Jersey, New York, Oregon and Washington.
If you have received a supply of tests and no longer need them we ask you to return them to your local CMC the next time you are in the center. If you have any questions contact OCH-COVID19Testing@optioncare.com.
Thank you for your resilience and for helping us keep our patients safe throughout this pandemic.
**Mike Bavaro**
Chief Human Resources Officer
Chief Diversity Officer

Plaintiff's Exhibit
55



D-000470

**#DeliveringHope**

This is an internal email and not intended for external distribution. Please do not forward.

This email was sent to amy.eiduke@optioncare.com from optioncarehealthcommunications@optioncare.com
Receive in Plain Text

**Prida, Leah**

| | |
|---|---|
| **From:** | Anastasopoulos, Claudia |
| **Sent:** | Thursday, March 3, 2022 4:33 PM |
| **To:** | Prida, Leah |
| **Cc:** | Weber, Deanna |
| **Subject:** | Follow up |
| **Importance:** | High |

*Hello, Leah. As a follow up to our conversation on Wednesday, March 2, 2022, please confirm in writing that it is your intent to voluntarily decline the Covid 19 testing required as a condition of your vaccine accommodation and that without testing, your employment will terminate effective the next scheduled day of your in-office duties on Wednesday, March 9, 2022.*

*As soon as possible, please confirm your understanding and acceptance of the details in the email.*

*Thank you.*

**Claudia Anastasopoulos**
**Director, Network Operations**
**Clinical Specialties, Inc.**
**An Option Care Health Company**
**6288 Hudson Crossing Parkway**
**Hudson, OH 44236**

**Mobile: 216-870-5700**

Claudia.anastasopoulos@optioncare.com

option care health

ClinicalSpecialties
An Option Care Health Company

*Extraordinary care that changes lives*



Plaintiff's Exhibit
58

**Prida, Leah**

**From:** Anastasopoulos, Claudia
**Sent:** Friday, March 4, 2022 3:40 PM
**To:** Prida, Leah
**Cc:** Weber, Deanna
**Subject:** RE: Follow up

I will check on the return of the equipment.

Please respond that you understand that your employment will be terminated effective Wednesday, March 7, 2022 if you do not test.

Thank you.

**Claudia Anastasopoulos**
**Director, Network Operations**
**Clinical Specialties, Inc.**
**An Option Care Health Company**
**6288 Hudson Crossing Parkway**
**Hudson, OH 44236**

**Mobile: 216-870-5700**

option care health    ClinicalSpecialties An Option Care Health Company

*Extraordinary care that changes lives*

**From:** Prida, Leah <leah.prida@optioncare.com>
**Sent:** Friday, March 4, 2022 2:57 PM
**To:** Anastasopoulos, Claudia <claudia.anastasopoulos@optioncare.com>
**Cc:** Weber, Deanna <deanna.weber@optioncare.com>
**Subject:** RE: Follow up

Hi Claudia

As I said in our meeting on 3/2/22 the facts are - BinaxNOW Covid-19 Ag Card test kit is listed for use under Emergency Use Authorization only. It is NOT FDA approved. It is intended for individuals suspected of COVID-19 by their healthcare provider (Option Care nor anyone else is my medical provider) Within the first seven days of symptom onset. These tests are not meant to be taken weekly and not meant to be given to people who are showing no symptoms. Besides the facts about the chemicals used in these tests I have explained in previous emails.

I have not quit, I had always planned to stay with this company until I retired. I have been here over half my life, 25 years and 5 months this Monday!

You are stating that Wednesday will be the official date of termination, since that is the day I was scheduled to come into the office?
How am I able to return my equipment? Am I allowed to come to the front desk to drop it off?

Thanks

*Leah Prida*
*Network Cash Application Specialist*
*Clinical Specialties Inc., an Option Care Health Company*
*6288 Hudson Crossing Pkwy*
*Hudson, OH. 44236*
*440-627-2231*
*Fax – 440-550-8835*

**From:** Anastasopoulos, Claudia < >
**Sent:** Thursday, March 3, 2022 4:33 PM
**To:** Prida, Leah < >
**Cc:** Weber, Deanna < >
**Subject:** Follow up
**Importance:** High

*Hello, Leah. As a follow up to our conversation on Wednesday, March 2, 2022, please confirm in writing that it is your intent to voluntarily decline the Covid 19 testing required as a condition of your vaccine accommodation and that without testing, your employment will terminate effective the next scheduled day of your in-office duties on Wednesday, March 9, 2022.*

*As soon as possible, please confirm your understanding and acceptance of the details in the email.*

*Thank you.*

**Claudia Anastasopoulos**
**Director, Network Operations**
**Clinical Specialties, Inc.**
**An Option Care Health Company**
**6288 Hudson Crossing Parkway**
**Hudson, OH 44236**

**Mobile: 216-870-5700**