**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEAH PRIDA, | ) | CASE NO. 5:23-cv-905 |
| | ) | |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| OPTION CARE ENTERPRISES, INC., | ) | |
| *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Leah Prida ("Prida") is a former employee of defendants Option Care Enterprises, Inc. and Clinical Specialties, Inc. (collectively, "Option Care"). In March 2022, Option Care terminated Prida for failing to follow its Covid-19 vaccinate-or-test policy. Prida claims that Option Care violated both Title VII of the Civil Rights Act and Ohio law by failing to accommodate her religious beliefs and by firing her. (Doc. No. 10 (Amended Complaint).)

Before the Court are several pending motions. They are: (1) Plaintiff's Combined Objection to Magistrate Judge's Order and Motion to Compel Discovery (Doc. No. 60); (2) Plaintiff's Motion to Strike Defendants' Estimated Attorneys' Fees Itemization (Doc. No. 57); (3) Plaintiff's Motion to Extend Deadlines for Public Health Expert Reports (Doc. No. 47); and (4) Defendants' Motion to Strike Plaintiff's Expert Report of Jennifer Smith, Ph.D. (Doc. No. 58).

For the stated reasons, Prida's Objection to Magistrate Judge's Order (Doc. No. 60) is **OVERRULED**, the magistrate judge's order (Doc. No. 55) is **AFFIRMED**, and Prida's Motion to Compel Discovery (Doc. No. 60) is **DENIED**. Prida's Motion to Strike Defendants' Estimated

Attorneys' Fees Itemization (Doc. No. 57) is **DENIED**. Prida's Motion to Extend Deadlines for

Public Health Expert Reports (Doc. No. 47) is **DENIED**. Option Care's Motion to Strike Plaintiff's

Expert Report of Jennifer Smith, Ph.D. (Doc. No. 58) is **GRANTED**.

## I.      BACKGROUND

### A.  Factual Background

Prida was a network specialist for Option Care. (Doc. No. 10 ¶¶ 8, 11–12.)[1] At the start of

the Covid pandemic, Option Care "implemented a policy which permitted employees in certain

positions to work remotely in certain circumstances[.]" (Doc. No. 24 (Amended Answer) ¶ 15.)

But in late 2021, Option Care announced a return-to-office policy that required in-office

employees to either receive a Covid vaccine or request an exemption. (Doc. No. 10 ¶ 21; Doc. No.

24 ¶ 28.) That policy applied to employees in Prida's position, who "were required to work on-site

at least once or twice per week because of their specific job duties." (Doc. No. 24 ¶ 52.)

Prida—citing various religious beliefs and medical concerns—requested an exemption

from the policy. (Doc. No. 10 ¶ 40; *see* Doc. No. 12-1, at 4.)[2] Option Care exempted Prida from

the vaccine mandate but required her to take a weekly Covid test. (Doc. No. 24 ¶¶ 41–43, 62.) In

response, Prida objected to the testing requirement. (*Id.* ¶¶ 44–45.) Prida sought a remote working

arrangement or alternative testing methods as accommodations, both of which Option Care denied.

(*See, e.g.*, *id.* ¶¶ 54–55, 57–58.) Option Care gave Prida several warnings that failure to comply

---

[1] The Court set out the facts of this case in a prior memorandum opinion and order. (*See* Doc. No. 16, at 1–4.) The Sixth Circuit did as well. *See Prida v. Option Care Enters., Inc.*, No. 23-3936, 2025 WL 460206, at *1–3 (6th Cir. Feb. 11, 2025). Familiarity with those facts is assumed, and the Court details only the facts and procedural history necessary to resolve the pending motions.

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

with the testing requirement would result in termination. (*Id.* ¶¶ 47, 49, 55, 57, 59, 61.) When Prida refused to be tested, she was terminated. (*Id.* ¶ 63.)

### B. Procedural History

Prida filed this action on May 2, 2023. (Doc. No. 1 (Complaint).) Prida alleges that Option Care engaged in discrimination based on her religion, failed to accommodate her religious beliefs, and retaliated against her. (Doc. No. 10 ¶¶ 66–88.)[3] On October 24, 2023, the Court dismissed Prida's claims because it concluded that Prida's objections to the testing mandate were primarily secular, and so not protected by Title VII. (Doc. No. 16 (Memorandum Opinion and Order), at 6–12.) Prida appealed the Court's dismissal (Doc. No. 18 (Notice of Appeal)), and the Sixth Circuit reversed in light of two recently decided cases that clarified the pleading standard in Title VII cases, *Prida v. Option Care Enters., Inc.*, No. 23-3936, 2025 WL 460206, at *5 (6th Cir. Feb 11, 2025). It concluded that "Prida sufficiently *pled* that refusing weekly Covid testing was an aspect of her religious belief." *Id.* (emphasis added). It recognized, however, that "discovery and summary judgment" would "provide the opportunity to carefully scrutinize the basis of Prida's refusal to take Covid tests, including through a deposition of Prida." *Id.*

After remand, several procedural steps and filings relevant to the pending motions followed. The Court issued a Case Management Conference Scheduling Order ("CMC Scheduling Order") on March 6, 2025. (Doc. No. 21.) The order specified that "[i]n all cases in which it is anticipated that a party or parties will seek attorney fees, . . . such party shall serve on opposing counsel and file with the Court *at or before the* [case management conference] a preliminary

---

[3] In Prida's amended complaint, paragraphs 83–88 are incorrectly labeled as the paragraphs 21–26. To avoid confusion, the Court refers to the second set of paragraphs 21–26 as paragraphs 83–88.

estimate and/or budget of the amount of fees and expenses expected to be the subject of any such claim." (*Id.* at 4 (emphasis added).) The case management conference was held on April 11, 2025. (Minute Order [non-document], 04/11/2025.) Prida filed her estimated attorneys' fees itemization on April 11, 2025. (Doc. No. 28.) Option Care submitted its estimated attorneys' fees itemization on February 2, 2026 (Doc. No. 51)—approximately ten months after the case management conference. On March 2, 2026, Prida filed a motion to strike defendants' estimated attorneys' fees itemization on the basis it was untimely filed. (Doc. No. 57.)

At the case management conference, the Court designated January 30, 2026, as the deadline for the party with the burden of proof to identify experts and provide reports, and February 27, 2026, as the deadline to identify rebuttal experts and provide reports. (Doc. No. 34, at 1–2 (CMC Plan).) Option Care did not identify any primary experts witnesses under Fed. R. Civ. P. 26(a)(2)(B) or (C). (Doc. No. 58, at 2.) Prida, meanwhile, disclosed two expert reports: (1) the expert report of Riffat H. Qadir, MD, FACS, FAAOA, IFMCP ("Qadir Report"); and (2) the expert report of Jennifer Smith, Ph.D. ("Smith Report"). (Doc. No. 56 (Notice of Disclosure of Plaintiff's Expert Reports).) The Qadir Report was disclosed to Option Care on January 30, 2026. (*Id.*) The Smith Report was disclosed to Option Care on February 27, 2026. (*Id.*) On January 30, 2026, Prida filed a Motion to Extend Deadlines for Public Health Expert Reports.[4] (Doc. No. 47.) On March 6, 2026, Option Care filed a motion to strike the Smith Report on the basis that it was untimely disclosed. (Doc. No. 58.)

---

[4] At the status conference held on February 10, 2026, parties discussed the need to extend the expert witness deadlines. The Court indicated that it was not inclined to grant plaintiff's motion for an extension of the expert witness deadlines. (Minutes of Proceedings [non-document], 02/10/2026.)

4

On December 23, 2025, Prida filed a notice requesting a Local Rule 37.1 telephone conference to resolve a discovery dispute involving Option Care's failure to produce certain documents related to Option Care's determination that it would incur undue hardship if it accommodated Prida's request for an exemption from its Covid-19 testing policy. (Doc. No. 39 (Notice of Discovery Dispute).) Pursuant to Rule 72(a) and Local Rule 72.2(a),[5] the Court referred the matter to the magistrate judge. (Doc. No. 40 (Referral Order).) The magistrate judge held a telephone conference with the parties on January 21, 2026, to resolve the discovery dispute. (Doc. No. 44 (Minute Order of Telephone Conference).) The parties reached an agreement on limited production, but several disputes remained unresolved. (Doc. No. 45 (Joint Status Report); Order [non-document], 02/02/2026.) On February 26, 2026, the magistrate judge issued an order denying Prida's request to compel supplemental document production, except as to supplemental document production pursuant to Prida's Request for Production ("RFP") No. 3. (Doc. No. 55, at 15.) On March 11, 2026, Prida filed an objection to the magistrate judge's order. (Doc. No. 60.) In the alternative, Prida moves to compel discovery. (*Id.*)

## II.  LAW AND ANALYSIS

### A.  Prida's Objection to the Magistrate Judge's Order and Motion to Compel Discovery

#### 1.  *The Discovery Dispute and the Magistrate Judge's Order*

During discovery, a dispute arose regarding Option Care's alleged withholding of information relating to its affirmative defense that it would incur undue hardship if it accommodated Prida's request for an exemption from Option Care's Covid-19 testing policy. (*See*

---

[5] As used herein, the term "Rule(s)" refers to the Federal Rules of Civil Procedure, and the term "Local Rule(s)" refers to the Local Rules for the United States District Court, Northern District of Ohio.

Doc. No. 39.) Prida averred that "[d]uring the deposition of Mike Rude, [d]efendants' Human Resources Director, it was revealed that many documents responsive to this request exist but were not produced relating to [d]efendants' assessment of health risks which they claim support declining a testing policy accommodation on the grounds of undue hardship." (*Id.* at 1) On December 15, 2025, Prida sent Option Care a deficiency letter identifying these alleged deficiencies and requesting supplementation. (*See generally* Doc. No. 41-1 (Prida Deficiency Letter).) Option Care responded by stating that it had complied with its discovery obligations and that it would not provide additional supplementation. (*See generally* Doc. No. 41-2 (Option Care Response to Deficiency Letter).)

Prida's request sought: (i) additional documents relating to Option Care's Covid-19 vaccination and testing policies (RFP No. 1); (ii) additional documents relating to Option Care's reliance on federal or state guidance (RFP No. 3); (iii) additional documents relating to Option Care's determination that exempting Prida from testing would cause undue hardship (RFP No. 7); (iv) the reasons and factual bases for denying Prida's accommodation (Interrogatory No. 10); (v) the identification of Option Care decision-makers (Interrogatories Nos. 3 & 18); and (vi) an evaluation of testing providers and testing methods (RFP Nos. 1 & 7). (Doc. No. 53 (Prida's List of Written Discovery Requests at Issue), at 2–3; *see* Doc. No. 49 (Prida Letter Brief), at 1.[6]) Option

---

[6] In her Local Rule 37.1(a)(3) letter brief to the magistrate judge, Prida insisted that "[a] party needs only to show that a discovery request is *reasonably calculated* to lead to admissible evidence." (Doc. No. 49, at 5 (emphasis added).) The Court brings attention to this because this is not the correct standard for the scope of discovery under Rule 21. Rule 21 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and *proportional to the needs of the case*[.]" Fed. R. Civ. P. 21(b)(1) (emphasis added). The "reasonably calculated to lead to admissible evidence" language was deleted when the rule was amended in 2015 because it threatened to "swallow any other limitation on the scope of discovery." *See* Fed. R. Civ. P. 21 advisory committee's note (2015 amendment).

Care, meanwhile, contends that Prida's requested information is not proportional to the needs of the case. (Doc. No. 50 (Option Care Letter Brief), at 1, 5.)

A telephone conference was held on January 21, 2026, in an attempt to resolve the discovery dispute. (Doc. No. 44 (Minute Order of Telephone Conference).) On January 26, 2026, the parties filed a joint status report summarizing the progress made during the meet-and-confer process. (Doc. No. 45.) On February 2, 2026, the magistrate judge permitted the parties to file Local Rule 37.1(a)(3) letter briefs in support of their respective positions. (Order [non-document], 02/02/2026.) Both parties submitted letter briefs. (Doc. No. 49; Doc. No. 50 (Option Care Letter Brief).) On February 10, 2026, the Court held a telephonic status conference with the parties in which the parties agreed to confer to determine whether the discovery dispute could be resolved through stipulation. (Minutes of Proceedings [non-document], 02/10/2026.)

On February 26, 2026, the magistrate judge issued an order denying most of Prida's requests to compel supplement document production. (Doc. No. 55, at 15.) As it related to RFP Nos. 1 and 7, the magistrate judge denied Prida's request to order Option Care to produce supplemental documentation because Option Care had represented that it had produced all documents in support of its claims/defenses. (*Id.* at 8, 11.) Furthermore, Prida had offered no legal authority in support of its contention that Option Care was obligated to produce documents "related to" those listed in its initial disclosures. (*Id.* at 8, 10.) The magistrate judge also denied Prida's request for additional documents pursuant to Interrogatories 3 and 18 because Prida did not identify any pertinent RFPs. (*Id.* at 14.)

The magistrate judge granted Prida's request for supplemental document production as it related to RFP No. 3, subject to limitations. (*Id.* at 11–14.) RFP No. 3 asked Option Care to produce

"all communications to or from the individuals [responsible for evaluating Prida's requests for accommodation] from January 1, 2020 to present which concern the evaluation of [p]laintiff's requests for accommodation from [d]efendants' Covid-19 policies." (*Id.* at 11 (quoting Doc. No. 52 (Option Care Objections to Discovery Requests), at 19).) Prida contends that Option Care produced "public guidance links only" and did not produce all the material requested under RFP No. 3. (Doc. No. 53, at 2.) In particular, Prida sought the additional "discovery of records regarding [d]efendants' consideration of the 8/13/21, 2/28/22 and 4/25/22 policies because they are likely to lead to admissible evidence related to the risk assessment made by [d]efendants in denying [p]laintiff's requested accommodation[.]" (Doc. No. 55, at 11–12 (quoting Doc. No. 41 (Discovery Dispute Joint Status Report), at 3).) The magistrate judge ordered Option Care to provide supplemental documentation as it related to RFP No. 3 but limited it to certain communications from the email inbox of former Option Care Chief Human Resources Officer Michael Rude ("Rude") between November 4, 2021, and March 2022. (*Id.* at 14.) On March 11, 2026, Prida objected to the magistrate judge's order. (Doc. No. 60.)

2. *Standard of Review*

At the outset, the Court observes that Prida has attempted to invoke the wrong standard of review. Prida contends that "[t]he 'contrary to law' prong is reviewed *de novo*—the district court may substitute its own judgment on questions of legal interpretation, including interpretation of the discovery rules and the applicable legal framework." (Doc. No. 60, at 6.) This is incorrect. In *United States v. Curtis*, 237 F.3d 598 (6th Cir. 2001), *superseded by rule on other grounds*, Fed. R. Crim. P. 32.1, *as recognized in United States v. Dowl*, 956 F.3d 904, 908 (6th Cir. 2020), the Sixth Circuit explained:

[28 U.S.C.] § 636(b) creates two different standards of review for district courts when a magistrate court's finding is challenged in district court. A district court shall apply a 'clearly erroneous or contrary to law' standard of review for the 'nondispositive, preliminary measures of § 636(b)(1)(A).' *United States v. Raddatz*, 447 U.S. 667, 673, 100 S. Ct. 2406, 65 L. Ed. 424 (1980). Conversely, 'dispositive motions' excepted from § 636(b)(1)(A), such as motions for summary judgment or for the suppression of evidence, are governed by the de novo standard.

*Id.* at 603. The language of Rule 72 "has implemented this statutory provision[.]" *Callier v. Gray*, 167 F.3d 977, 980 (6th Cir. 1999) (citations omitted). The relevant portion of Rule 72(a) provides that this Court shall consider objections to a magistrate judge's order on a nondispositive matter and "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

The "clearly erroneous" standard of review is a limited one. *See Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) ("When a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to 'reconsider' the determination, but under a limited standard of review." (emphasis omitted)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 2d 746 (1948). A reviewing court may not reverse a magistrate judge's finding merely because it would have decided the matter differently. *Roby v. Bloom Roofing Sys.*, 343 F.R.D. 487, 490 (E.D. Mich. 2023) (citation omitted). If there are two plausible views of a matter, then a decision cannot be "clearly erroneous." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985).

"In reviewing a magistrate judge's decision to determine whether it is 'contrary to law,' a district court is to apply the same standard the Sixth Circuit employs to review a district court's

9

ruling on an evidentiary question, which is an 'abuse of discretion' standard." *Champion Foodservice, LLC v. Vista Food Exch., Inc.*, No. 1:13-cv-1195, 2015 WL 7251307, at \*1 (N.D. Ohio Nov. 16, 2015); *see Nathan v. Ohio State Univ.*, No. 2:10-cv-872, 2013 WL 139874, at \*2 (S.D. Ohio Jan. 10, 2013) ("Because a magistrate judge exercises the discretion of the District Court in the first instance in deciding discovery questions, a magistrate judge's order on discovery should be reviewed by a district judge on objections under Fed. R. Civ. P. 72(a) for 'abuse of discretion.'"). An abuse of discretion occurs when the magistrate judge "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *See Paschal v. Flagstar Bank*, 297 F.3d 431, 434 (6th Cir. 2002) (quotation marks and citation omitted). Under this deferential standard, "[t]he party seeking to reverse a Magistrate Judge's ruling concerning discovery bears a heavy burden, in part, because the Magistrate Judge is afforded broad discretion in these matters." *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 371 F. Supp. 2d 358, 360 (W.D.N.Y. 2005).

 *3.   Discussion*

 Prida's raises three objections to the magistrate judge's order. The first objection in effect argues that the magistrate judge's order overly limited the scope of discovery in contravention of Rule 26(b)(1). (*See* Doc. No. 55, at 6–13.) The second objection is that the magistrate judge failed to address the discovery of documents relating to the evaluation of testing method providers and alternative testing methods. (*See id.* at 9–11.) The third objection is that the magistrate judge did not comply with the procedural requirements of Local Rule 37.1. (*See id.* at 13–14.) Prida requests that the Court "(1) direct [d]efendants to conduct searches of email accounts [and] relevant document datasets for all identified executive custodians . . . using [p]laintiff's proposed Boolean

search terms, over the time period of June 1, 2021 (to cover the development of the August 13, 2021 policy) through April 25, 2022; [and] (2) [o]rder [d]efendants to produce documents relating to the evaluation of testing methods and testing providers, as identified in Rude's deposition testimony and relevant to Dr. Qadir's expert opinions regarding the availability of clinically equivalent alternatives[.]" (Doc. No. 60, at 15.)

Upon review, the Court finds no clear error or abuse of discretion. The Court thus overrules Prida's objections, affirms the magistrate judge's order, and denies Prida's motion to compel.

### a. Whether the Magistrate Judge Correctly Applied Rule 26

Rule 26 limits the scope of permissible discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). District courts, however, maintain discretion to limit the scope of discovery where the information sought is overly broad. *Id.*; *see Goldblum v. University of Cincinnati*, 62 F.4th 244, 256–57 (6th Cir. 2023). A request for discovery is overly broad where it seeks irrelevant information, lacks sufficient limitations, or otherwise seeks information that is not "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The appropriate points of reference are, therefore, the claims and defenses set forth in the pleadings. *Kesterson v. Kent State Univ.*, No. 5:16-cv-298, 2018 WL 2129610, at *3 (N.D. Ohio May 8, 2018) (the requested discovery "must be relevant to one of [plaintiff's] claims").

Prida contends that the magistrate judge's order overly limits discovery she is entitled to under Rule 26(b)(1). (*See* Doc. No. 60, at 13.) In particular, Prida argues that the magistrate judge's order was erroneous because it: (i) improperly excluded information from the August 13, 2021

policy period; and (ii) improperly limited the supplemental search to Rude's inbox and did not encompass the inboxes of other Option Care executives. (*See id.* at 7–12.)

### i. *Temporal Limitations*

The magistrate judge's order limited the search of Rude's inbox to "all email communications between Mr. Rude and John Rademacher, Brenda Wright, Carrie Reed, and/or Harriet Booker—dating from November 4, 2021, through the conclusion of Mr. Rude's employment in March 2022[.]" (Doc. No. 55, at 14.) Although the magistrate judge acknowledged Prida's argument that communications dating from August 2021 may be relevant because Rude testified that a health risk assessment was conducted in connection with Option Care's August 2021 Covid policy, the magistrate judge also noted that "this Court must remain mindful of the applicable procedural constraints" and that "[t]he request to compel production is only viable to the extent [Option Care] failed to produce documents requested under Rule 34." (*Id.* at 12–13 (citation and quotation marks omitted).)

The magistrate judge stated that Prida's RFP No. 3 asked for communications "which concern the evaluation of [p]laintiff's requests for accommodation from [d]efendants' Covid-19 policies." (*Id.* at 13; Doc. No. 52, at 19.) The magistrate judge found "that communications between Mr. Rude and the other executives regarding their decision to apply the Covid Policy to [p]laintiff's job sufficiently 'concern' the evaluation of [p]laintiff's parallel request for accommodation to be responsive to RFP 3." (Doc. No. 55, at 13.) She then determined that "the time-period to search for such communications appropriately extends back to November 2021" based on Option Care's representations that the February 2022 Covid policy was based on the CMS rule adopted in November 2021. (*Id.*) The magistrate judge rejected Prida's assertion that

the search should extend even earlier to June or August of 2021 because "[d]efendants'
development of a Covid Policy six months before [p]laintiff's request for accommodation cannot
appropriately be said to 'concern' the evaluation of [p]laintiff's specific accommodation request."
(*Id.* at 14.)

Prida's objection simply rehashes the same arguments raised before the magistrate judge
that the search of Rude's inbox should date back to August 2021. But the magistrate judge has
already ruled on this issue in accordance with Rules 26(b) and 37. The magistrate judge concluded
that information prior to November 2021 was not sufficiently responsive to RFP No. 3 and
therefore beyond the permissible scope of Prida's supplemental document search request. The
Court finds the magistrate judge's construction of RFP No. 3 reasonable and concludes that her
temporal limitation on the inbox search to information dating from November 2021 was not clearly
erroneous or contrary to law.

Prida also contends that the magistrate judge erred by setting the end of the Rude inbox
search period to March 2022 when the parties had already agreed for the search period to extend
to April 25, 2022. (Doc. No. 60, at 8.) According to Prida, "[t]he exclusion of the April 25, 2022,
policy period is error because the parties had agreed to it[.]" (*Id.* at 9.)

The Court identifies no error in the magistrate judge's decision to specify March 2022 as
the end of the inbox search period. The magistrate judge's basis for identifying March 2022 as the
end of the search period was because it was the last month Rude was employed by Option Care.

(Doc. No. 55, at 14; Doc. No. 60-10 (Rude Deposition Transcript) 6:3–4, 77:25–78:2.) The Court finds the magistrate judge's temporal limitation a reasonable application of Rule 26(b)(1).[7]

### ii. Inbox Limitation

The magistrate judge also limited the search to Rude's inbox. The magistrate judge declined to extend the supplemental document search to the email inboxes of other executives because RFP 3 only requested communications "'to or from individuals identified in Interrogatory No. 3.'" (Doc. No. 55, at 13 (quoting Doc. No. 52, at 19).) "Because Mr. Rude is the only member of the executive leadership team appropriately listed in response to Interrogatory 3, the plain language of RFP 3 limits the application of that document request to Mr. Rude's communications." (*Id.* at 14.)

Once again, Prida attempts to raise the same arguments already considered by the magistrate judge. Prida argues that Rude's deposition testimony "establishes that vaccination and testing policy was set collectively by an executive management team" and that "[l]imiting discovery to a single custodian's inbox . . . is inconsistent with the *Groff* framework." (Doc. No. 60, at 11.) But the magistrate judge's order made clear that the scope of RFP 3 is limited by the scope of Interrogatory No. 3 and defendant's answers thereto. Prida's argument was "not supported by the plain language of RFP 3[.]" (*Id.* at 13.) The Court finds that the magistrate judge's decision to limit the supplemental search to Rude's inbox was reasonable, closely tied to Rule 26(b)(1) and the plain text of the discovery requests, and not clearly erroneous or contrary to law.

---

[7] The Court notes that the magistrate judge's order requesting supplemental document production does not preclude the parties from producing additional documents the parties had already agreed upon. Therefore, the mere fact that the parties had agreed for the search to extend to communications to April 25, 2022 (*see* Doc. No. 45, at 1), does not itself constitute error requiring the reversal of the magistrate judge's order.

* * *

Prida's Rule 26(b)(1) objections do not point to any abuse of the magistrate judge's broad discretion to issue rulings concerning discovery. *See Am. Rock Salt Co., LLC*, 371 F. Supp. 2d at 360. Prida has not met her heavy burden to establish that the magistrate judge's order was clearly erroneous or contrary to law. Prida's objection as to the magistrate judge's limitations on the supplemental document production relating to the search of Rude's email inbox is overruled.

b. *Whether the Magistrate Judge Failed to Address the Discovery of Documents Relating to the Evaluation of Testing Method Providers and Alternative Testing Methods*

Prida maintains that "the [m]agistrate [j]udge's order did not address an entire category of Plaintiff's requested discovery: documents relating to [d]efendants' evaluation of testing providers and alternative testing methods." (Doc. No. 60, at 9.) This, according to Prida, "is itself error." (*Id.*)

Prida is mistaken; the magistrate judge did address that issue:

[W]hile Plaintiff seeks to compel the production of documents "related to Defendants' basis for its undue hardship defense (*as well as testing alternatives*)" [], she offers no legal authority to support a finding that this Court may compel Defendants to produce documents that are broadly "related to" Defendants' affirmative defenses when RFP 7 is explicitly limited to a request for documents "supporting" Defendants' conclusion that they would suffer an undue hardship [].

. . .

Because Defendants represent that they have produced all documents "supporting" their affirmative defense of undue hardship as requested in RFP 7, and Plaintiff has not demonstrated that they failed to do so, Plaintiff's request to compel supplemental document production pursuant to RFP 7 is DENIED.

(Doc. No. 55, at 10–11 (citations omitted) (emphasis added).) The magistrate judge determined that Prida was not entitled to discovery on documents relating to alternative testing methods

because such documents were not sufficiently responsive to RFP 7. Because the magistrate judge did in fact address the issue of testing alternatives, the Court overrules Prida's objection on this issue.

### c. Whether the Magistrate Judge Complied with Local Rule 37.1

Finally, Prida objects to the magistrate judge's order on the basis that she failed to follow the process outlined in Local Rule 37.1. (Doc. No. 60, at 13–14.) Prida argues that Local Rule 37.1 was not complied with because: (1) that the magistrate judge bypassed Local Rule 37.1's formal motion-to-compel procedure (*id.*); (2) the letter brief format resulted in the magistrate judge ruling based on an "incomplete record" (*id.* at 13); (3) the magistrate judge's order did not resolve the word search dispute (Doc. No. 65 (Prida Reply Brief in Support of Objection to Magistrate Judge's Order), at 8 ); and (4) the magistrate judge ruled on issues that the letter briefs did not address (*id.* at 8–9). But none of the arguments raised by Prida demonstrate that the magistrate judge failed to comply with the procedural requirements Local Rule 37.1.

### i. Entitlement to Formal Briefing Under Local Rule 37.1

Prida argues that because the parties never filed memoranda in support of their positions with an opportunity for a hearing, "[t]he [m]agistrate [j]udge's order resolved the substance of the dispute through an informal process that bypassed the formal briefing stage the [Local] Rule contemplates." (*Id.* at 13.)

Local Rule 37.1 outlines the procedure governing discovery disputes. It provides:

In the absence of a Judicial Officer establishing an alternative procedure for handling discovery disputes, the following procedure shall apply.

(1) Discovery disputes shall be referred to a Judicial Officer only after counsel for the party seeking the disputed discovery has made, and certified to the Court the making of, sincere, good faith efforts to resolve such disputes.

(2) The Judicial Officer may attempt to resolve the discovery dispute by telephone conference.

(3) In the event the dispute is not resolved by the telephone conference, the parties shall outline their respective positions by letter and the Judicial Officer shall attempt to resolve the dispute without additional legal memoranda.

(4) If the Judicial Officer still is unable to resolve the dispute, the parties may file their respective memoranda in support of and in opposition to the requested discovery by a date set by the Judicial Officer, who may schedule a hearing on the motion to compel.

LR 37.1(a).

Steps (1) through (3) were clearly followed. The Court referred the matter pursuant to Local Rule 37.1(1) after the parties had certified that they had met in good faith to resolve the discovery dispute. (*See* Doc. No. 39; Doc. No. 40.) The magistrate judge then attempted to resolve the discovery dispute by telephone conference on January 21, 2026, with no success. (*See* Doc. No. 44.) The parties were then directed to meet and confer to determine if the parties could agree on targeted search terms. (*Id.*) When the parties were unable to do so (*see* Doc. No. 46 (Joint Status Report)), the magistrate judge directed the parties to file limited briefing in the form of letter briefs "so that the parties may identify legal authority to support their respective positions." (Order [non-document], 02/02/2026.) Both parties submitted letter briefs (Doc. No. 49; Doc. No. 50), after which the magistrate judge issued her order (Doc. No. 55).

The magistrate judge did not proceed to step (4). But that does not constitute failure to comply with Local Rule 37.1. Step (4) applies "[i]f the Judicial Officer still is *unable to resolve the dispute*" after having completed the preceding steps. LR 37.1(a)(4) (emphasis added). Here, the magistrate judge resolved the discovery dispute by order issued on February 26, 2026. (Doc. No. 55.) There was therefore no need to continue with step (4). *Cf. J&R Passmore, LLC v. Rice*

17

*Drilling D, LLC*, No. 2:18-cv-1587, 2023 U.S. Dist. LEXIS 51210, at \*15 (S.D. Ohio Mar. 24, 2023) (rejecting proposed interpretation that Rule 37 has a mandatory requirement that the parties formally move to compel discovery). The mere fact that Prida disagrees with the magistrate judge's determination does not entitle her to proceed with step (4) and continue to litigate the discovery dispute after a resolution has been reached.

### ii.   The Letter Brief Format

Prida further contends that the five-page letter brief limitation meant "[her] arguments were necessarily compressed, legal authority could not be fully developed, and deposition testimony could not be cited with the specificity a memorandum of law would permit." (Doc. No. 60, at 13.) But courts have considerable latitude in managing motion practice and enforcing local rules that place parameters on briefing, including page limits. *See, e.g.*, *LaComba v. Eagle Home Loans & Inv., LLC*, No. 2:23-cv-370, 2023 WL 6201597, at \*1 (E.D. Cal. Sept. 22, 2023); *see also Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 766 (D. Ariz. 2012) ("Judicial economy and concise argument are purposes of the page limit." (quotation marks and citation omitted)). The magistrate judge's decision to set page limitations was in no way reversible error.

### iii.  The Resolution of the Word Search Dispute

Prida contends that although the parties' word search dispute was the basis for the discovery dispute, "the [m]agistrate [j]udge . . . issued an [o]rder that did not address the search-term dispute at all[.]" (Doc. No. 65, at 9.) But this is incorrect; the magistrate judge did in fact resolve the word search dispute. The crux of the word search dispute was that Prida proposed additional targeted searches "designed to capture executive-level deliberations and inputs, including policy drafts, reports, and updates, using ordinary executive language and subject-matter

terms," to which Option Care objected. (Doc. No. 45, at 1–2.) The magistrate judge addressed this issue when she ruled that "[Prida's] further argument[] that the search of the executive communications should extend to draft policies in [d]efendants' computer systems but not attached to relevant communications . . . [is] also not persuasive" because "[t]he plain language of RFP 3 seeks 'communications,' not draft policies." (Doc. No. 55, at 14 (citation omitted).) Prida therefore cannot argue that the magistrate judge's order was erroneous for failure to resolve the word search dispute.

### iv.  *The Scope of the Issues Before the Magistrate Judge*

Finally, Prida argues that the magistrate judge's order was erroneous because she addressed issues that were beyond the subject of the parties' briefing. As Prida understood it, "[t]he focus of the letter brief . . . was a dispute over search terms." (Doc. No. 60, at 4.) But the magistrate judge "resolved different questions—custodial scope, temporal boundaries, and discovery categories— that the letter briefs did not address and on which the parties were never directed to present legal authority." (Doc. No. 65, at 8.) Prida argues that this was a violation of Rule 37.1. (*See id.* at 8–9.)

Prida's contentions are belied by the record. Search terms were *but one* of several discovery-related issues the parties raised before the magistrate judge. The parties' submissions to the magistrate judge in advance of the January 22, 2026, telephonic status conference (*see* Doc. No. 52, Doc. No. 53; Doc. No. 54 (Option Care's Response to Prida's List of Written Discovery Requests at Issue))[8] confirm that multiple discovery requests were at issue. Although the parties

---

[8] These documents were filed on the docket on February 26, 2026. The Court notes, however, that the magistrate judge received these documents prior to the January 22, 2026, telephonic status conference. (*See* Doc. No. 55, at 2.) These documents demonstrate that Prida should have been aware of the numerous discovery-related issues before the magistrate judge in advance of submitting her letter brief on February 6, 2026. (*See* Doc. No. 49.)

came to an agreement on limited production (*see* Doc. No. 45), the magistrate judge acknowledged that "unresolved disputes remain[ed]" and permitted the parties to submit letter briefs to "identify legal authority to support their respective positions" for the following unresolved disputes: "[p]laintiff's entitlement to further production; the appropriate time period to be searched; the appropriate email accounts to be searched; and the scope of search terms to be employed." (Order [non-document], 02/02/2026.) Contrary to Prida's assertion (*see* Doc. No. 60, at 4 ("The focus of the letter brief, as directed by the Magistrate, was a dispute over search terms.")), the parties were directed to submit letter briefs on *all issues* the magistrate judge addressed in her order. The Court identifies no error here.

Prida had ample opportunity to develop her position in her letter brief. Prida's failure to include any legal authority in her letter brief (*see generally* Doc. No. 40; *see also* Doc. No. 50, at 1 ("Plaintiff does not identify *any* legal authority." (emphasis in original)); Doc. No. 55, at 7 ("Although [p]laintiff filed a letter brief as permitted, her brief does not identify any legal authority to support her pending request to compel document production.")) or address all discovery-related issues before the magistrate judge were faults of her own; Prida cannot now, after the fact, claim that the magistrate judge's order was erroneous because she failed to adequately articulate her position in the letter brief in the first place.

* * *

The magistrate judge's ruling is grounded in a proper application of the federal rules and legal authority, is plainly reasonable in light of the presented briefing, and does not show clear error or abuse of discretion in denying Prida's request to compel supplemental document production. *See Sherrod v. Enigma Software Grp. USA, LLC*, No. 2:13-cv-36, 2014 WL 309948,

at *2 (S.D. Ohio Jan. 28, 2014); *Hyland v. Homeservices of Am., Inc.*, No. 3:05-cv-612, 2012 WL 1680109, at *3 (W.D. Ky. May 14, 2012) ("Under the clearly erroneous standard, a court reviewing a magistrate judge's order should not ask whether the finding is the best or the only conclusion that can be drawn from the evidence." (quoting *Tri–Star Airlines, Inc. v. Willis Careen Corp. of Los Angeles,* 75 F. Supp.2d 835, 839 (W.D. Tenn. 1999))). Having failed to establish that the magistrate judge's order is clearly erroneous or contrary to law, Prida's objections are overruled.

In the alternative, Prida requests that the Court "grant [p]laintiff leave to file a formal motion to compel with full briefing, as contemplated by Local Rule 37.1, on the grounds that the informal resolution process was never completed[.]" (Doc. No. 60, at 15.) But, as discussed above, the magistrate judge complied with Local Rule 37.1, and Local Rule 37.1(a)(4) does not entitle parties to file formal motions to compel after the judicial officer has already resolved the discovery dispute. The Court therefore denies Prida leave to file a formal motion to compel. To the extent that Prida also requests an extension of the discovery cutoff (*id.* at 16), that request is also denied.

**B. Prida's Motion to Strike Option Care's Estimated Attorneys' Fees Itemization**

Prida moves pursuant to Rule 16(f)(1)(C) to strike Option Care's estimated attorneys' fees itemization. (Doc. No. 57.) Prida notes that Option Care's estimated attorneys' fees itemization was filed "over 300 days after the deadline, without any motion for leave or explanation as to why this extremely lengthy delay may be excusable neglect." (*Id.* at 1.)

Option Care opposes Prida's motion, arguing that the Court's CMC Scheduling Order only required the parties to submit their estimated attorneys' fees itemization "'in which it is *anticipated*' that a party or parties will seek attorney fees[.]" (Doc. No. 59, at 1 (emphasis in original).) At the time of the CMC Scheduling Order, Option Care claims that it "did not anticipate

seeking attorney's fees and could not reasonably have estimated the expected amount of any such fees." (*Id.*) Option Care avers that it was not only until recently that it came to anticipate that it may seek to recover attorneys' fees. (*Id.* at 2.) Upon this realization, Option Care filed its estimated attorneys' fees itemization "as a courtesy to [Prida] and the Court, and in the interests of full disclosure[.]" (*Id.* at 2–3.)

"On motion or on its own, the court may issue any just orders . . . if a party or its attorney[] fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). The court has broad discretion to impose sanctions under Rule 16(f)(1). *Haskins v. Wilmington Sav. Fund Soc'y, FSB*, No. 1:16-cv-941, 2017 WL 7035756, at *2 (W.D. Mich. Nov. 7, 2017). Here, although Option Care's estimated attorneys' fees itemization is plainly beyond the deadline set forth in the CMC Scheduling Order (*see* Doc. No. 21), the Court declines to sanction Option Care under Rule 16(f)(1). Should Option Care prevail and be entitled to request an award of reasonable attorneys' fees, information regarding attorneys' fees would need to be presented. Disclosing estimates of this information early could help parties to better evaluate their positions as the case proceeds, particularly as it pertains to any settlement discussions. Accordingly, the Court denies Prida's Motion to Strike Defendants' Estimated Attorneys' Fees Itemization (Doc. No. 57). Option Care is advised to comply with the Court's pretrial orders moving forward.

## C. Prida's Motion to Extend Deadlines for Public Health Expert Reports

Prida moves for an extension of the Court's January 30, 2026, and February 27, 2026, expert and expert rebuttal deadlines. (Doc. No. 47, at 1.) Prida represents that Option Care failed to provide certain documents in discovery "which is necessary for [p]laintiff's public health experts to provide reports" and that this impacted the ability of the expert to draft their report. (*See*

*id.* at 2.) Prida "requests an extension of the deadlines for filing such reports until a reasonable period after such discovery is provided." (*Id.*)

Option Care opposes the motion. (Doc. No. 48 (Opposition to Motion to Extend Deadlines).) Option Care argues that there is no reason to modify the current case management plan and trial order and that granting Prida's request "would only unnecessarily prolong what has already been an exhaustive discovery process in which all relevant and discoverable information has been exchanged in accordance with Civil Rule 26(b)(1)." (*Id.* at 1.)

The Court concludes that Prida has not provided good cause for granting an extension. Prida does not adequately explain how the discovery dispute between the parties affected the ability of Prida's retained expert to draft their report. Indeed, the fact that Prida disclosed her expert reports on January 30, 2026, and February 27, 2026, indicates that Prida's retained experts were capable of providing their expert opinions despite then-pending discovery dispute. (*See* Doc. No. 56.) The Court is further reluctant to grant Prida's motion considering that this case has been pending for nearly three years, and Prida's motion does not propose a new deadline for the expert reports. Granting Prida's request to extend the deadline for filing expert reports "until a reasonable period after . . . discovery" would further prolong an already protracted matter. *See Bentley v. Highlands Hosp. Corp.*, No. CV 15-97, 2016 WL 5867496, at *4 (E.D. Ky. Oct. 6, 2016) ("[T]he window for supplementation and rebuttal does not stay open forever. And it is not hard to see why—otherwise there would be no finality to expert reports, as each side, in order to buttress its case, would go on ad infinitum supplementing existing reports and modifying opinions previously given." (cleaned up)). Prida's Motion to Extend Deadlines for Public Health Expert Reports (Doc. No. 47) is hereby denied.

**D.  Option Care's Motion to Strike Prida's Expert Report of Jennifer Smith, Ph.D.**

Option Care moves, pursuant to Rules 26(a) and 37(c), to strike the Smith Report. (Doc. No. 58, at 1.) Option Care asserts that the Smith Report is improperly characterized by Prida as a rebuttal expert report because it does not respond to any expert evidence offered by Option Care. (*Id.*) "Rather, it is an affirmative expert report that [p]laintiff served twenty-eight (28) days after the deadline for expert reports set forth in the Court's July 29, 2025[,] Case Management Plan and Trial Order." (*Id.*)

Prida counters by arguing that the Smith Report was governed by the February 27 deadline outlined in the CMC Plan because "a rebuttal expert report may address matters on which the opposing party bears the burden of proof, such as affirmative defenses." (Do. No. 62 (Opposition to Motion to Strike Smith Report), at 3.) In the alternative, Prida argues that the Smith Report is governed by the default rule under Rule 26(a)(2)(D)(i) which requires disclosure "at least 90 days before the date set for trial." (*Id.* at 4 (quoting Fed. R. Civ. P. 26(a)(2)(D)(i).) Lastly, Prida contends that even if the Smith Report was untimely disclosed, it should not be excluded under Rule 37(c)(1). (*Id.* at 12–14.)

*1.  Whether the Smith Report Is Properly Characterized as a Rebuttal Expert Report*

A rebuttal opinion is one "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)[.]" Fed. R. Civ. P. 26(a)(2)(D)(ii). It is well-established that rebuttal expert reports must be directly responsive to an opponent's expert's opinions. *See, e.g., Hampton v. Bob Evans Transportation Co., LLC*, No. CV 6:18-143, 2019 WL 1521976, at *2 (E.D. Ky. Apr. 8, 2019) ("Rebuttal opinions must be intended solely to contradict or rebut evidence on the same subject matter identified by another party['s]

expert disclosure." (quotation marks and citations omitted)); *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, No. 2:14-cv-8, 2021 WL 1555776, at *2–3 (E.D.N.C. Apr. 20, 2021) (clarifying that a rebuttal expert report responds to the opposing party's expert reports, not the opposing party's claims (collecting cases)); *U.S. Bank, N.A. v. Glogowski L. Firm, PLLC*, 339 F.R.D. 579, 581 (W.D. Wash. 2021) ("Under [Rule 26(a)(2)(D)(ii)'s] definition, a report must satisfy only two elements to qualify as a rebuttal report: it must address 'the same subject matter' as another party's expert report and must be 'intended solely to contradict or rebut' that report." (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii))); *Bentley*, 2016 WL 5867496, at *5 (noting that rebuttal evidence "may not advance new arguments or new evidence outside the scope of the opposing expert's testimony" (quotation marks and citations omitted)).

Here, Option Care has elected not to retain an expert in support of its undue hardship affirmative defense. (*See* Doc. No. 58, at 1.) It is therefore not possible for the Smith Report to be properly identified as a rebuttal expert report. The Smith Report cannot address "the same subject matter" as Option Care's report, nor can it be "intended solely to contradict or rebut" that report, when there is no expert report to rebut. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

Prida advocates for a broader definition of rebuttal evidence. She contends that a rebuttal expert may "address matters on which the opposing party bears the burden of proof, such as an affirmative defense." (Doc. No. 62, at 4 (citing *Bell v. Progressive Select Ins. Co.*, 692 F. Supp. 3d 1121, 1125 (M.D. Fla. 2023); *Rodriguez v. Clear Blue Ins. Co.*, No. 8:22-cv-2455, 2024 WL 229424, at *3 (M.D. Fla. Jan. 22, 2024); *Palatka Church of God v. Ohio Sec. Ins. Co.*, No. 3:23-cv-726, 2024 WL 4115253, at *2 (M.D. Fla. Sept. 4, 2024)).)

The Court rejects this broad reading of rebuttal evidence. The notion that a rebuttal expert may testify on *any matter* which the opposing party bears the burden of proof is at odds with the plain language of Rule 26(a)(2)(D)(ii) which relates to "evidence . . . intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)." Fed. R. Civ. P. 26(a)(2)(D)(ii); *cf. Cabading v. Port of Portland*, 598 F. Supp. 3d 1009, 1017 (D. Or. 2022) (concluding that plaintiff's rebuttal expert report was permissible under Rule 26(a)(2)(D)(ii) because it refuted the affirmative defenses *discussed in defendant's expert report*). Rule 26(a)(2)(D)(ii)'s definition of rebuttal evidence is substantially narrower than the interpretation Prida urges the Court to adopt.

Prida may not evade the expert report deadline by improperly recategorizing her expert report as a rebuttal expert report. The Court therefore finds that under Rule 26(a)(2)(D)(ii)'s definition of rebuttal evidence, the Smith Report is not properly categorized as a rebuttal expert report.[9]

2. *Whether the Smith Report Is Governed by Rule 26(a)(2)(D)(i)'s Default Rule*

In the alternative, Prida argues that the Smith Report is governed by Rule 26(a)(2)(D)(i) which provides that "[a]bsent a stipulation or a court order, the disclosures must be made . . . at least 90 days before the date set for trial or for the case to be ready for trial[.]" Fed. R. Civ. P. 26(a)(2)(D)(i).[10] In support, Prida cites *Georgel v. Preece*, No. CV 0:13-57, 2014 WL 12647775

---

[9] The Smith Report may also not be properly categorized as a rebuttal expert report for the additional reason that, as Prida conceded in her motion to extend deadlines, "[Smith] may have opinions relevant to [p]laintiff's claims[.]" (Doc. No. 47, at 1.)

[10] The trial standby period in this case is scheduled for August 31, 2026. (Doc. No. 34, at 3.)

(E.D. Ky. Dec. 10, 2014), which applied Rule 26(a)(2)(D)(i)'s default rule because the scheduling order was silent on the timing of the disclosure of rebuttal expert witnesses.

But here—unlike in *Georgel*—there is no need to default to Rule 26(a)(2)(D)(i) because the Court's CMC Plan clearly establishes the schedule for disclosing expert testimony. The relevant language of the CMC Plan is reproduced below:

> Upon consideration of the Local Rules for the United States District Court for the Northern District of Ohio, the Court assigns this matter to the **Standard** Track. Accordingly, the Court sets forth the following deadlines:
>
> . . .
>
> (4) Deadline for Party(ies) with Burden of Proof to Identify Experts[] and Provide Reports in Compliance with Civil Rule 23(a)(2): **1/30/2026**
>
> (5) Deadline to Identify Rebuttal Experts[] and Provide Reports in Compliance with Civil Rule 26(a)(2): **2/27/2026**

(Doc. No. 34, at 1–2 (emphasis in original).) Rule 26(a)(2)(D)(i) and (ii) only come into play "[a]bsent a stipulation or a court order[.]" Fed. R. Civ. P. 26(a)(2)(D). But when, as here, a court order specifies the timeline for disclosing expert testimony, "[a] party must make these disclosures at the times and in the sequence the court orders." *Id.* Accordingly, Prida must make disclosures in accordance with the established CMC Plan. And, because the Smith Report cannot be properly characterized as a rebuttal expert report (*see supra* § II(D)(i)), it was due by the January 30, 2026, deadline specified in the CMC Plan. (*See* Doc. No. 34, at 1.)

Prida moves on to contend that the Smith Report falls outside the scope of the CMC Plan because it is silent on the scenario of "a non-burden party presenting expert testimony to defeat an affirmative defense where the burden party chose not to use an expert." (Doc. No. 62, at 4.) Prida further contends that the burden-shifting structure of Title VII is such that "[o]nce the plaintiff

establishes a prima facie case of failure to accommodate . . . the burden shifts to the employer to demonstrate that the proposed accommodation would impose an undue hardship[.]" (*Id.* at 6.) She argues that the Smith Report does not establish her prima facie case but instead opposes an affirmative defense on which defendants bear the burden of proof. (*Id.* at 8.)

Prida's argument falls short because she misconstrues the three-part burden-shifting *McDonnell Douglas* framework for Title VII cases. Under this framework, the plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981). "[I]f the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).

Critically, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains *at all times with the plaintiff.*" *Id.* (citing *Bd. of Trs. of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2, 99 S. Ct. 295, 58 L. Ed. 2d 216 (1978)) (emphasis added); *see St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511–12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993) (collecting cases). Once a plaintiff establishes their prima facie case, "it creates a presumption that the employer unlawfully discriminated against the employee." *Harris v. City of Akron, Ohio*, 836 F. App'x 415, 419 (6th Cir. 2020) (quotation marks and citations

28

omitted). But "[t]his presumption *does not shift the burden of proof*, but only the burden of producing some evidence of permissible motive." *Id.* (citing *Burdine*, 450 U.S. at 256 n.8) (emphasis added); *see also Hicks*, 509 U.S. at 511–12 ("[A] presumption does not shift the burden of proof[.]"); *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 169 (6th Cir. 1996) (noting that "the defendant's burden is one of production, not of persuasion" once plaintiff has established their prima facie case). Prida's aversions that she did not bear the burden of proof (*see* Doc. No. 62, at 11–12) are contrary to law and unavailing. Accordingly, Prida's expert disclosure deadline was the January 30, 2026, deadline for the party with the burden of proof (here, Prida). Prida's decision to instead disclose the Smith Report on February 27, 2026 (*see* Doc. No. 34), resulted in her submission being untimely.

### 3. Whether the Smith Report Should Be Excluded

Having found that the Smith Report was untimely, the Court turns to deciding whether Prida's untimely disclosure should be excluded.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Federal Rule of Civil Procedure 37(c)(1) requires *absolute compliance* with Rule 26(a), that is, it 'mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified.'" *U.S. ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land In Tenn.*, 821 F.3d 742, 752 (6th Cir. 2016) (citing *Roberts ex rel. Johnson v. Galen of Va., Inc.,* 325 F.3d 776, 782 (6th Cir. 2003) (further citation omitted)) (emphasis added); *see also Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976,

983 (6th Cir. 2004) (characterizing the exclusion of non-disclosed evidence under Rule 37(c)(1) as "automatic and mandatory" unless the non-disclosure was justified and harmless).

The burden is on the offending party to show that its nondisclosure was substantially justified or harmless. *RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 668 (6th Cir. 2024) (quotation marks and citations omitted). In assessing substantial justification and harmlessness, courts are to consider five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Id.* at 668–69 (quoting *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (further citation omitted)). "District courts have broad discretion in applying these factors and need not apply each one rigidly." *Id.* at 669 (citing *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019)). "The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bentley*, 2016 WL 5867496, at *10 (quoting *Howe*, 801 F.3d at 747, 749).

Prida contends that exclusion is not appropriate here. (*See* Doc. No. 62, at 12.) Prida argues that: (i) Option Care had notice and therefore suffered no surprise; (ii) to the extent there was any surprise, it was curable because Option Care had the opportunity to depose Jennifer Smith or disclose a sur-rebuttal expert; (iii) permitting the late disclosure of the Smith Report would not disrupt the trial; and (iv) the Smith Report is "critical" to Prida's case. (*Id.* at 12–14.) Prida concludes by arguing that "the existing [disclosure] schedule provides [d]efendants a mechanism to respond" and that "[w]here the rules afford the opposing party both actual notice and a

procedural opportunity to respond within the existing case schedule, striking the expert testimony is neither necessary nor proportionate." (*Id.* at 14.)

Upon review, the Court finds that untimely disclosure of the Smith Report was neither harmless nor substantially justified. Admittedly, the risk of surprise posed to Option Care was minimal given that Prida filed a motion to extend deadlines (Doc. No. 47) and discussed this motion during a telephonic status conference with Option Care and the Court (Minutes of Proceeding [non-document], 02/10/2026). It should not have come as a surprise that Prida disclosed the Smith Report when she did. The Court also takes as true Prida's statement that the Smith Report is important to the case because it "address[es] the epidemiological and public health dimensions" of her case. (*See* Doc. No. 61, at 12.) Although these factors favor Prida, remaining factors together weigh more heavily in favor of exclusion.

For one, the Court suspects that Prida's untimely filing of the Smith Report reflects "underhanded gamesmanship" rather than an "honest" and harmless mistake. *See Bentley*, 2016 WL 5867496, at *10. Prida initially requested a deadline extension because of allegedly withheld information deemed "necessary for [Prida's] public health expert[][.]" (Doc. No. 47, at 2.) Yet Prida eventually submitted the Smith Report on February 27, 2026, even though she still allegedly lacked the necessary information for her expert to draft her report. This suggests the alleged lack of information was not the genuine cause for the untimely disclosure of the Smith Report. Indeed, if Prida could have prepared the Smith Report without the requested information by February 27, she also should have been capable of preparing the Smith Report by the January 30, 2026, deadline set by the Court.

For another, Prida expressly acknowledged that the Smith Report "may have opinions relevant to [her] claims," suggesting that it expands on matters relevant to her case-in-chief. (*See id.* at 1.) Prida cannot make this admission while simultaneously arguing that the Smith Report is "in rebuttal of [d]efendants' undue hardship affirmative defense and therefore would be governed by the rebuttal expert deadline." (*See id.*) In light of her candid and telling admission, Prida should have known that she was required to file the Smith Report by the January 30, 2026, deadline specified in the CMC Plan.

Prida's argument that "the existing schedule provides [d]efendants with a mechanism to respond" (Doc. No. 62, at 14) also falls flat. Prida disclosed the Smith Report on February 27, 2026. (Doc. No. 56 (Notice of Disclosure).) The CMC Plan provided no additional dates that would have given Option Care the opportunity to respond. (*See generally* Doc. No. 34.) Absent requesting leave to file an expert rebuttal report beyond the February 27, 2026, deadline, Option Care was incapable of presenting its own expert testimony in response to Prida's untimely submission.[11] And although Prida argues that Option Care can "address the Smith Report's opinions in any summary judgment briefing" (Doc. No. 62, at 12), Option Care has been deprived of the ability to respond to the Smith Report with its own expert rebuttal.

Finally, Prida's explanations for her untimely disclosure of the Smith Report are unconvincing. She simply reargues that the Smith Report is governed by the February 27, 2026, rebuttal deadline or, alternatively, by the default rule under Rule 26(a)(2)(D)(i). (*Id.* at 13.) The

---

[11] Prida contends that, because the Court's CMC Plan did not set a deadline for sur-rebuttals, that Option Care was entitled to file a sur-rebuttal "within 30 days after the other party's disclosure" in accordance with Fed. R. Civ. P. 26(a)(2)(D)(ii)'s default rule. (Doc. No. 62, at 13.) This is incorrect. As earlier discussed (*see supra* § II(D)(i)), the Smith Report is not properly categorized as a rebuttal and therefore was governed by the January 30, 2026, deadline. Option Care's window to respond was until the February 27, 2026, rebuttal deadline. But because Prida disclosed the Smith Report on this date, Option Care was denied any opportunity to respond.

Court has already addressed why these arguments fail and why they instead appear to be a calculated effort to bypass the CMC Plan's January 30, 2026, deadline. To the extent Prida's argument on this factor is that she failed to timely disclose the Smith Report because of a *bona fide* mistake in law, the Court does not find this to be a compelling explanation. Given the plain language of Rule 26(a)(2)(D)(ii), the CMC Plan, and the abundance of case law interpreting what constitutes permissible rebuttal evidence, Prida's purported interpretation of the expert report deadlines is less than reasonable and does not strike the Court as sufficient to be "substantial justification" under Rule 37.

"Under Rule 37(c)(1), forgiveness must be earned. . . . [I]t neither comes automatically nor easily." *Bentley*, 2016 WL 5867496, at *11. Prida has failed to demonstrate that her untimely disclosure of the Smith Report was harmless or substantially justified. The Court concludes that exclusion of the Smith Report is warranted and grants defendants' motion to strike (Doc. No. 58).

## III.  CONCLUSION

For the reasons stated herein, Prida's Objection to Magistrate Judge's Order (Doc. No. 60) is **OVERRULED**, the magistrate judge's order (Doc. No. 55) is **AFFIRMED**, and Prida's Motion to Compel Discovery (Doc. No. 60) is **DENIED**. Prida's Motion to Strike Defendants' Estimated Attorneys' Fees Itemization (Doc. No. 57) is **DENIED**. Prida's Motion to Extend Deadlines for Public Health Expert Reports (Doc. No. 47) is **DENIED**. Option Care's Motion to Strike Plaintiff's Expert Report of Jennifer Smith, Ph.D. (Doc. No. 58) is **GRANTED**.

**IT IS SO ORDERED**.

Dated: May 18, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**